# 99 DTA 211

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL VI-CAGUAS/HUMACAO/GUAYAMA**

WILMA MARIE RAMOS BERRIOS
Peticionaria-Recurrida

v.

ENRIQUE LOPEZ COTTO
Peticionario-Apelante

Núm. KLCE-99-00160

San Juan, Puerto Rico, a 30 de junio de 1999

Panel integrado por su Presidenta, Juez Rivera de Martínez
y los Jueces Colón Birriel y Soler Aquino

Rivera de Martínez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El peticionario, Enrique López Cotto, acude ante nos mediante recurso de *certiorari* presentado el 1 de marzo de 1999. Solicita la revisión de una resolución emitida por el Tribunal de Primera Instancia, Sala Superior de Caguas, el 20 de enero de 1999, notificada el día 29 del mismo mes y año.

La adecuada comprensión del asunto ante nuestra consideración requiere que expongamos brevemente el trasfondo fáctico y procesal del caso de autos.

### I

El presente recurso tiene su origen en tres peticiones por incumplimiento de pensión alimenticia instadas en diferentes salas del Tribunal de Primera Instancia contra el peticionario por igual número de ex-esposas con las cuales procreó hijos.

El 6 de febrero de 1998, el Tribunal de Primera Instancia, Sala Superior de Caguas, emitió una resolución que fue notificada el 3 de marzo de 1998. Mediante la misma, modificó la pensión alimentaria de los menores, Rafael y María Elena López Ramos, procreados en el matrimonio del peticionario con Wilma Marie Ramos Berríos, y fijó la misma en mil treinta y un dólares con veintinueve centavos ($1,031.29). La suma tendría efecto retroactivo al 13 de septiembre de 1995.

Para garantizar el pago, dicho foro emitió una orden de retención de ingresos dirigida al Colegio Universitario de Humacao de la Universidad de Puerto Rico, patrono de López Cotto, quien es profesor en esa institución, y apercibió al demandado de que su incumplimiento sería constitutivo de desacato.

El 16 de marzo de 1998, el Colegio Universitario de Humacao presentó una moción ante el referido tribunal e informó que contra los ingresos de López Cotto existían dos órdenes de retención por concepto de pensiones alimentarias adicionales emitidas por el Tribunal de Primera Instancia, Salas de Fajardo y Carolina. Expuso que la suma de las tres excedían el monto del salario neto del profesor. Ante ello, solicitó ser instruido en cuanto al orden en que debían efectuarse los pagos.

Mientras tanto, ese mismo día, el peticionario presentó ante el tribunal recurrido una *"Moción Solicitando Determinaciones de Hechos Adicionales"*. Planteó, entre otras cosas, que la aplicación de las tablas guías utilizadas para determinar la pensión alimentaria no había sido justa ni razonable. Dos días más tarde, presentó otra moción solicitando la transcripción de la vista para proveérsela a su representante legal, pues a la vista había comparecido por derecho propio.

Posteriormente, el 19 de marzo de 1998, presentó, además, una moción de reconsideración arguyendo que la determinación del tribunal atentaba contra el Artículo 303(b) del *"Consumer Credit Protection Act,"* ▇ que prohibía el embargo en exceso del cincuenta por ciento (50%) del sueldo. El 31 de marzo de 1998, presentó otra moción solicitando el prorrateo de las pensiones sobre las cuales se habían emitido órdenes de retención de ingreso, y la consolidación de todos los casos de alimentos que tenía pendientes, para que fuesen atendidos por la Sala de Caguas del Tribunal de Primera Instancia. Para ello pidió la anuencia de las salas de Carolina y Fajardo, donde estaban ventilándose los casos restantes.

El 24 de abril de 1998, la sala recurrida emitió una resolución a los únicos fines de dejar sin efecto la orden de retención al patrono. El 20 de julio de 1998, el peticionario presentó una moción expresando la necesidad de que el foro de instancia resolviese las mociones presentadas con fecha posterior a la resolución que modificó la pensión, y que ordenase la consolidación de los casos. Alegó no tener capacidad económica para pagar las

pensiones impuestas.

El 19 de octubre de 1998, el tribunal señaló una vista sobre el estado de los procedimientos para el 4 de noviembre de 1998. Celebrada la misma, el foro recurrido dispuso que todos los representantes legales de las partes envueltas en los diversos casos, debían concertar una reunión entre sí. No obstante, el 2 de diciembre de 1998, el alimentante presentó una moción informando que sus gestiones habían sido infructuosas y no había podido lograr que todas las partes asistieran a la referida reunión.

Atendidas todas las mociones pendientes y en consideración al hecho de que no se había logrado la reunión entre las partes, el 20 de enero de 1999, el Tribunal de Primera Instancia, Sala de Caguas, emitió la resolución recurrida. En síntesis, dispuso que la moción sobre determinaciones de hechos adicionales y la de reconsideración fueron presentadas tardíamente, por lo que la solicitud de modificación de pensión alimenticia tenía que ser presentada en la forma ordinaria, debiendo demostrar que existía un cambio sustancial en sus ingresos, y no como parte de la solicitud de prorrateo.

En cuanto a la orden de retención de ingreso, resolvió que el hecho de que existiesen otras no impedía a dicho foro emitir una adicional para beneficio de los alimentistas. Dejó sin efecto la orden de 14 de mayo de 1998, que, a su vez, dejaba sin efecto la orden de retención emitida y ordenó al Colegio Universitario de Humacao consignar el cincuenta por ciento (50%) del salario neto del empleado hasta que se emitiese una determinación final.

Ante el hecho de que existía más de una orden de retención cuyas sumas excedían el límite estatutario local y federal, el tribunal determinó que procedía una vista de prorrateo. La misma fue señalada para el 3 de marzo de 1999, advirtiendo que las notificaciones sobre la referida vista a cada uno de los alimentistas del peticionario hacían académica la necesidad de trasladar los casos de Carolina y Fajardo a dicho foro.

Inconforme, López Cotto acude ante nos mediante recurso de *Certiorari* ■ presentado el 1 de marzo de 1999, señalando los siguientes errores:

*"ERRO EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR NO HA LUGAR LA SOLICITUD DE MODIFICACION Y UNIFORMIDAD DE PENSIONES ALIMENTARIAS Y CONSOLIDAR LOS TRES CASOS BAJO EL DE MAYOR ANTIGUEDAD.*

*ERRO EL TRIBUNAL DE PRIMERA INSTANCIA AL DEJAR SIN EFECTO LA ORDEN DEL 24 DE ABRIL Y NOTIFICADA EL 14 DE MAYO DE 1998 LA CUAL REINSTALA LA ORDEN DE RETENCION AL PATRONO POR LA SUMA DE $1,031.29 Y A SU VEZ ORDENAR AL COLEGIO UNIVERSITARIO DE HUMACAO CONSIGNAR EL 50% DEL SALARIO NETO DEL APELANTE.*

*ERRO EL TRIBUNAL DE PRIMERA INSTANCIA AL PRIVAR A LOS DEMAS ALIMENTISTAS DE SU DERECHO A RECIBIR PENSION HASTA QUE SE CELEBRE LA VISTA DE PRORRATEO Y SE EMITA UNA DETERMINACION FINAL, TODO ELLO EN VIOLACION AL DEBIDO PROCESO DE LEY POR NO HABER SIDO NOTIFICADOS COMO PARTES INDISPENSABLES COMO DISPONE LA LEY.*

*ERRO EL TRIBUNAL DE PRIMERA INSTANCIA AL SEÑALAR UNA VISTA DE PRORRATEO PARA EL 3 DE MARZO 1999 A LAS 9:00 DE LA MAÑANA SIN HABER NOTIFICADO DEBIDAMENTE A LAS REPRESENTACIONES LEGALES DE LOS ALIMENTISTAS O PARTES INDISPENSABLES.*

*ERRO EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR SIN LUGAR LA MOCION*

*SOLICITANDO DETERMINACIONES DE HECHO ADICIONALES Y DE RECONSIDERACION POR SER ALEGADAMENTE TARDIO."*

El 8 de marzo de 1999, le concedimos un término de veinte (20) días a la parte recurrida para expresar su posición. La recurrida, Wilma Marie Ramos Berríos, presentó su oposición al recurso el 20 de abril de 1999, luego de que le hubiésemos concedido una prórroga para hacerlo.

El 25 de marzo de 1999, el peticionario presentó una *"Moción Urgente en Auxilio de Jurisdicción"* solicitando la paralización de una vista de desacato que habría de celebrarse ante el Tribunal de Primera Instancia, Sala de Caguas, en igual fecha. La misma fue denegada.

El 28 de abril de 1999, el peticionario presentó otra moción en auxilio de nuestra jurisdicción. Esta vez solicitó la paralización de otra vista de desacato pautada para celebrarse al día siguiente ante el foro recurrido. La misma fue declarada No Ha Lugar.

Celebrada la referida vista, el tribunal encontró incurso en desacato a López Cotto y ordenó su encarcelación. Sin embargo, previo a la referida orden, el peticionario había planteado que existían razones por las cuales la Juez que presidió la vista debía inhibirse de continuar atendiendo el caso. No obstante, la propia juez consideró los méritos del planteamiento y decidió que no debía inhibirse, procediendo entonces a ordenar el encarcelamiento del peticionario. Inconforme, éste recurrió ante nos de esa decisión. El 4 de mayo de 1999, emitimos resolución ordenando su excarcelación hasta tanto se dilucidase ante otro juez la solicitud de inhibición o recusación hecha por el peticionario, al amparo de la Regla 63.3 de las de Procedimiento Civil, ■ luego de lo cual el foro de instancia determinaría lo que en derecho considerase apropiado.

Contando con el beneficio de la posición de ambas partes, estamos en condiciones de resolver la controversia planteada.

## II

Debemos analizar, en primer término, la alegación de que tanto la moción de reconsideración, como la solicitud de determinaciones de hechos adicionales, fueron presentadas en tiempo.

La Regla 43.3 de las de Procedimiento Civil ■ provee un término de 10 días, luego de haberse archivado en autos copia de la notificación de la sentencia, para la presentación de una moción solicitando enmiendas o determinaciones de hechos adicionales.

De otra parte, a tenor de la Regla 43.4 del mismo cuerpo legal, una solicitud de determinaciones de hechos y conclusiones de derecho adicionales presentada en tiempo y de acuerdo a la Regla 43.3 tiene el efecto de interrumpir los términos dispuestos por ley para solicitar reconsideración, conforme a la Regla 47 de las de Procedimiento Civil. Ahora bien, la Regla 43.3 dispone, con meridiana claridad, que para que una moción de determinaciones de hechos y conclusiones de derecho tenga el efecto de interrumpir los términos previamente mencionados, es preciso que exista una sentencia de la cual se pueda presentar un recurso de apelación. En otras palabras, una moción presentada al amparo de la Regla 43.3 no interrumpe el término provisto para solicitar la revisión de resoluciones interlocutorias, como ocurrió en el caso de autos. *Figueroa Hernández v. Del Rosario Cervoni*, ___ D.P.R. ___ (1998), **98 J.T.S. 151,** Opinión de 23 de noviembre de 1998.

Ante ello, examinemos el término dispuesto por la Regla 47 de Procedimiento Civil ■ para la presentación de una moción de reconsideración. La misma establece un término de 15 días, desde la fecha de la notificación de la resolución u orden, o desde la fecha del archivo en autos de una copia de la notificación de la sentencia,

para presentar dicha moción.

El foro de instancia emitió la resolución recurrida el 6 de febrero de 1998, la cual fue notificada el 3 de marzo de 1998. Contra la misma, el recurrente presentó una moción solicitando determinaciones de hechos adicionales el 16 de marzo de 1998, la cual no interrumpió término alguno. Luego, el 19 de marzo de 1998, presentó una moción de reconsideración, habiendo transcurrido en exceso del término de quince (15) días provisto por la Regla 47 para ello.

En consideración a lo anterior, el tribunal recurrido declaró sin lugar las referidas mociones. Aunque no formuló el planteamiento ante el foro recurrido, ante nos el peticionario alega que nunca fue notificado de la resolución de 6 de febrero de 1998. Sostiene que al no perfeccionarse la notificación, quedaron interrumpidos los términos para invocar un remedio respecto a la resolución dictada.

Sabido es que un foro apelativo no atenderá planteamientos que no fueron presentados previamente ante el tribunal recurrido. Conforme a ello, estamos impedidos de pasar juicio sobre alegaciones que no fueron consideradas previamente por el foro de instancia, pudiendo haberse planteado. *Ortiz Torres v. K&A Developers,* ___ D.P.R. ___ (1994), **94 J.T.S. 78,** Opinión de 25 de mayo de 1994; *Autoridad Sobre Hogares v. Sagastivelza,* 71 D.P.R. 436 (1950). En lo que respecta a los demás errores, por estar íntimamente relacionados serán analizados en conjunto.

En primer término, consideraremos si actuó correctamente el tribunal al determinar que la evaluación de una solicitud de modificación de pensión alimentaria es un proceso independiente al de la solicitud de prorrateo.

En nuestro ordenamiento jurídico, la obligación de alimentar a los menores está revestida del más alto interés público. ■ El interés no puede ser otro que el bienestar del menor. ■ Es un deber ■ que depende de las necesidades del alimentista, quien los recibe, y de la capacidad del alimentante, quien los provee. Artículo 146 del Código Civil; ■ *Viera v. Morell,* 115 D.P.R. 4 (1983).

Dentro del concepto *"mejores intereses y bienestar del menor"* están comprendidos varios factores: (a) la preferencia del menor, su sexo, edad, salud mental y física; (b) el cariño que pueda brindársele por las partes en controversia; (c) la habilidad de las partes para satisfacer debidamente las necesidades afectivas, morales y económicas del menor; (d) el grado de ajuste del menor al hogar, la escuela y la comunidad en que vive; (e) la interrelación del menor con las partes, sus hermanos y otros miembros de la familia; y (f) la salud psíquica de todas las partes. *Sánchez Cruz v. Torres Figueroa,* 123 D.P.R. 351 (1989); *Nudelman v. Ferrer,* 107 D.P.R. 495 (1978); *Marrero Reyes v. García Ramírez,* 105 D.P.R. 90 (1976). Véase, además, Raúl Serrano Geyls, *Derecho de Familia de Puerto Rico y Legislación Comparada,* Vol. I, págs. 723-738.

Los tribunales, en su función de *parens patriae,* tienen facultad inherente para conceder y formular remedios compatibles y resultantes del derecho a la alimentación. Ruth E. Ortega-Vélez, *La Protección Jurisdiccional del Menor con Ocasión del Divorcio de los Padres,* Ediciones Situm, pág. 137; *Rodríguez v. Zayas Martínez,* ___ D. P.R. ___ (1993), **93 J.T.S. 75,** Opinión de 21 de mayo de 1993; *Colón v. Ramos,* 116 D.P.R. 258 (1985).

En Puerto Rico, el derecho a reclamar alimentos es uno de raíces constitucionales, como parte del derecho a la vida, ■ que se funda en principios universalmente reconocidos de solidaridad humana y por imperativos de los vínculos familiares. Su naturaleza jurídica parte de que en realidad es una obligación moral y una obligación civil jurídicamente exigible. Se trata de una obligación con características peculiares que la diferencian de las demás obligaciones: (1) la impone la ley por existir entre alimentista (acreedor) y alimentante (deudor) el vínculo parental que es personalísimo; y (2) la prestación debida es vital para la persona del acreedor, por lo cual el

ordenamiento jurídico se preocupa especialmente de asegurar y facilitar la efectividad de la prestación. Ruth E. Ortega-Vélez, *supra*, página 138. La obligación alimenticia, por tanto, tiene su fundamento en el derecho a la vida configurado como un derecho de la personalidad. *Negrón Rivera v. Bonilla*, 120 D.P.R. 61 (1987).

El concepto alimentos comprende todo lo que es indispensable para el sustento, habitación, vestido y asistencia médica, según la posición social de la familia. Incluye, además, la educación e instrucción del alimentista, cuando es menor de edad. Artículo 142 del Código Civil, ■ *Rodríguez v. Zayas Martínez, supra; Guadalupe Viera v. Morell, supra.*

En cuanto a la fijación de la pensión alimentaria, el Artículo 19 de la Ley Especial de Sustento de Menores, ■ establece que en todo caso en que se solicite la fijación o modificación, o en que se logre un acuerdo o estipulación de una pensión alimentaria, será mandatorio que el Tribunal o el Administrador, según sea el caso, determine el monto de la misma, utilizando para ello las guías adoptadas a tenor con lo dispuesto en la referida ley. Sobre la pensión alimentaria resultante existirá una presunción controvertible de que la misma es una justa, adecuada y en el mejor interés del menor.

Surge de la misma disposición legal que si la evidencia presentada demuestra que la aplicación de las guías resulta en una pensión injusta e inadecuada, el tribunal determinará la suma correspondiente luego de considerar los siguientes factores:

*"(1) Los recursos económicos de los padres y del menor;*

*(2) la salud física y emocional del menor, y sus necesidades y aptitudes educacionales o vocacionales;*

*(3) el nivel de vida que hubiera disfrutado el menor si la familia hubiera permanecido intacta;*

*(4) las consecuencias contributivas para las partes, cuando ello sea práctico y pertinente, y*

*(5) las contribuciones no monetarias de cada padre al cuidado y bienestar del menor."*

El mismo artículo establece parámetros adicionales sobre el procedimiento para solicitar la modificación de una pensión alimentaria fijada:

*"La modificación de los acuerdos o de las sentencias, resoluciones u órdenes sobre pensiones alimentarias podrá ser solicitada por el alimentista, el alimentante, el tribunal o el Administrador. Bajo ninguna circunstancia se modificará una pensión alimentaria dentro del procedimiento para objetar la retención en el origen de ingresos del alimentante, conforme dispone la sec. 523(4) de este título.*

*Se dispone, además, que toda orden de pensión alimentaria será revisada y modificada cada tres (3) años desde la fecha en que la orden fue establecida o modificada, en caso de que se presente una solicitud de revisión y modificación por el alimentante, alimentista, la Administración, o cualquier otra agencia Título IV-D cuando exista una cesión de derecho a tenor con la sec. 508 de este título. Toda orden de pensión alimentaria de menores emitida por el tribunal o la Administración deberá apercibir a las partes de su derecho a solicitar una revisión y modificación de su orden, y para aquellos casos bajo la jurisdicción de la Administración, dicha notificación se continuará expidiendo al menos una vez cada tres años. No obstante, cualquier ley o disposición en contrario, el requisito de cambio significativo o imprevisto en las circunstancias de alguna de las partes se cumple si la aplicación de las Guías Mandatorias para Fijar y Modificar Pensiones Alimenticias en Puerto Rico, adoptadas según se dispone en este Capítulo, resulta en una cantidad diferente a la pensión corriente*

*actualmente ordenada. La necesidad de proveer para el cuidado de salud de un menor en una orden también dará base para la modificación de la pensión alimentaria.*

*Además de realizar la revisión y modificación de una orden mediante las Guías Mandatorias para la Fijación y Modificación de Obligaciones Alimentarias, la revisión cada tres (3) años podrá estar basada en la aplicación de un ajuste del costo de vida. En caso de que las órdenes sean modificadas a base del ajuste en el costo de vida, cada parte tendrá el derecho a impugnar el resultado dentro de los treinta (30) días desde la fecha de notificación del ajuste. Durante dicho término la orden podrá será modificada mediante la aplicación de las Guías Mandatorias para la Fijación y Modificación de Obligaciones Alimentarias.*

*El Administrador o el tribunal, a solicitud de parte o a su discreción, podrá iniciar el procedimiento para revisar o modificar una orden de pensión alimentaria en cualquier momento y fuera del ciclo de tres (3) años, cuando entienda que existe justa causa para así hacerlo, tal como variaciones o cambios significativos o imprevistos en los ingresos, capacidad de generar ingresos, egresos, gastos o capital del alimentante o alimentista, o en los gastos, necesidades o circunstancias del menor, o cuando exista cualquier otra evidencia de cambio sustancial en circunstancias."*

En el caso de autos, luego de que el tribunal modificara la pensión alimentaria, el peticionario presentó ante el mismo foro una solicitud de prorrateo y pidió además que se consolidara la vista de rebaja de pensión con la de prorrateo. Dicha petición fue declarada sin lugar por el foro recurrido. Conforme a la normativa reseñada, evidentemente no erró al así disponerlo.

De otra parte, debemos evaluar si erró el tribunal recurrido al reinstalar la orden de retención de 6 de febrero de 1998.

La orden de retención de ingresos es uno de los mecanismos provistos por la referida ley para agilizar el cobro de las pensiones alimentarias. Sobre ésto, el Artículo 24 (1) (a) de la Ley Especial de Sustento de Menores, ██ provee lo siguiente:

*"El Tribunal o el Administrador, conforme a las disposiciones de este Capítulo, al momento de fijar o modificar una pensión alimentaria, emitirá inmediatamente una orden fijando o modificando la pensión alimentaria y requiriendo al patrono del alimentante o a cualquier persona que sea pagador con relación al alimentante, conforme se define en la sec. 501 de este título, que retenga o descuente en el origen, de los ingresos del alimentante, independientemente de si existen o no atrasos en el pago de pensión alimentaria, las cantidades señaladas en la orden para satisfacer el pago de la pensión, y de cualquier deuda por razón de pensiones vencidas y no pagadas. Estas cantidades serán determinadas al momento de emitirse la orden de retención. Esta orden no se emitirá separada de aquella que contenga la adjudicación, revisión o modificación del derecho del alimentista a la pensión o que adjudique cualquier otra controversia entre las partes, salvo que las partes lleguen por escrito a un acuerdo alterno mediante el cual se provea otra alternativa, o cuando el tribunal o el Administrador determine que existe justa causa para no notificar la orden de inmediata retención o el descuento en el origen de los ingresos del alimentante. En estos casos excepcionales, la orden de retención de ingresos no se notificará al patrono o pagador al momento de fijación o modificación de la pensión alimentaria, pero se apercibirá al alimentante que la misma será ejecutable en el momento que éste incurra en un atraso equivalente a un mes en el pago de pensión alimentaria. Cuando ocurra dicho incumplimiento, el Secretario del Tribunal o el Administrador procederá de conformidad con el procedimiento establecido en el inciso 1(b) de esta sección.*

*Una orden de retención de ingresos sólo podrá ordenar tal retención hasta los límites impuestos por la*

*legislación federal, ya que el Artículo 24(6) de la Ley Especial de Sustento de Menores ▊ incorpora los límites establecidos por el Artículo 303 del "Consumer Credit Protection Act", a la cantidad de dinero que puede ser retenido del ingreso de una persona." Galarza Rivera v. Mercado Pagán*, ___ D.P.R. ___ (1995), **95 J.T.S. 164,** Opinión de 19 de diciembre de 1995.

El referido Artículo 303 ▊ dispone en lo pertinente lo siguiente:

*"(a) Maximim allowable garnishment. Except as provided in subsection (b) of this section and in section 1675 of this title, the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed:*

*(1) 25 per centum of his disposable earnings for that week, or*

*(2) the amount by which his disposable earnings for that week exceed thirty times the Federal minimum hourly wage prescribed by section 206(a)(1) of title 29 in effect at the time the earnings are payable, whichever is less. In the case of earnings for any paid period other than a week, the Secretary of Labor shall by regulation prescribe a multiple of the Federal minimum hourly wage equivalent in effect to that set forth in paragraph (2).*

*(b) Exceptions*

*(1) The restrictions of subsection (a) of this section do not apply in the case of:*

*(A) any order for the support of any person issued by a court of competent jurisdiction or in accordance with an administrative procedure, which is established by state law, which affords substantial due process, and which is subject to judicial review.*

*(B) any order of any court of the United States having jurisdiction over cases under chapter 13 of title 11.*

*(C) any debt due for any State or Federal tax.*

*(2) The maximum part of the aggregate disposable earnings of an individual for any workweek which is subject to garnishment to enforce any order for the support of any person shall not exceed:*

*(A) where such individual is supporting his spouse or dependent child (other than a spouse or child with respect to whose support such order is used), 50 per centum of such individual's disposable earnings for that week; and*

*(B) where such individual is not supporting such a spouse or dependent child described in clause (A), 60 per centum of such individual's disposable earnings for that week; except that, with respect to the disposable earnings of any individual for any workweek, the 50 per centum specified in clause*

*(A) shall be deemed to be 55 per centum and the 60 per centum specified in clause*

*(B) shall be deemed to be 65 per centum, if and to the extent that such earnings are subject to garnishment to enforce a support order with respect to a period which is prior to the twelve-week period which ends with the beginning of such workweek."*

En el normativo *Galarza Rivera*, antes citado, nuestro Tribunal Supremo tuvo la oportunidad de analizar

ampliamente dicha limitación, señalando, entre otras cosas, que la susodicha Sección 1673 únicamente establece un límite a la cantidad embargable del ingreso del alimentante, sin que constituya dicho porciento una limitación, al total que un tribunal puede imponer por concepto de pensión alimentaria.

, Destacó, también, que al aprobar el *"Consumer Credit Protection Act"*, el Congreso estableció expresamente que los tribunales no estaban autorizados a emitir órdenes de ingresos que sobrepasen los límites dispuestos en la referida Sección 1673. Expuso, además, que como mecanismo adicional de protección al consumidor, se impuso la responsabilidad al patrono o pagador de depositar en el tribunal el total de las cantidades reclamadas hasta los límites impuestos por la Sección 1673(b) en caso de que la cantidad ordenada resultase en exceso de lo permitido por dicha Sección. ■■

Estableció una distinción entre la cantidad a ser retenida para el pago de la pensión corriente y la cantidad adicional ordenada a ser retenida para el pago de atrasos por concepto de pensión. Conforme al mismo, aunque la suma de ambas cantidades constituye el total a ser reservado, la cantidad a ser retenida por concepto de la pensión corriente goza de prelación sobre la suma reservada por concepto de atrasos. ■■

De acuerdo con el Artículo 24(7) de la Ley de Sustento de Menores, ■■ esta norma cobra relevancia cuando se emiten varias órdenes de retención contra los ingresos de un mismo alimentante:

*"Si existiera más de una notificación para la retención de ingresos en su origen con respecto a un mismo alimentante, el patrono o pagador depositará en la Administración el total de las cantidades reclamadas hasta los límites impuestos por la Sección 303 (b) del Consumer Credit Protection Act, según apliquen al alimentante y conforme lo indique el tribunal o la Administración. El tribunal o la Administración, dentro de los límites mencionados, prorrateará las cantidades retenidas entre los alimentistas, pagando preferentemente las pensiones que correspondan a menores y las pensiones corrientes por sobre las pensiones atrasadas, hasta los límites impuestos por la Sección 303(b) del Consumer Credit Protection Act, no obstante lo dispuesto en la sec. 1130 del Título 32, parte del Código de Enjuiciamiento Civil."*

En resumen, la norma establecida por el Tribunal Supremo en el caso de Galarza Rivera, ■■ es la siguiente:

*"Si se trata de un alimentista: (1) el tribunal emite una orden de retención por la totalidad de la pensión alimentaria concedida al alimentante sin excederse de los límites estatutarios, y (2) el patrono retiene los ingresos hasta el máximo establecido y los deposita en el tribunal.*

*Si se refiere a más de un alimentista: (1) existirá más de una orden de retención; (2) el patrono deberá calcular si la cantidad total de las órdenes de retención, la suma de la cantidad por concepto de pensiones corrientes, más la cantidad por concepto de atrasos, sobrepasa el límite establecido; (3) si lo sobrepasa, el patrono deposita en el tribunal hasta los límites embargables. Si las pensiones corrientes sobrepasan los límites o si éstos sólo son suficientes para cubrir dichas pensiones, los atrasos se podrán cobrar utilizando otros mecanismos de cobro de deuda; (4) el tribunal deberá prorratear entre los alimentistas la cantidad depositada. Para cobrar la parte de las pensiones alimentarias no cubiertas se podrán utilizar otros mecanismos de cobro.*

*Un patrono no podrá retener más del cincuenta por ciento (50%) del salario neto de un empleado, en casos en que el alimentante tenga dependientes previos o que recaiga sobre el empleado alimentante más de una orden de retención para el pago de alimentos de menores o del cónyuge. Este porciento aumenta a un cincuenta y cinco (55) cuando existen también atrasos de pensiones alimentarias que corresponden a un período anterior a las doce (12) semanas que precedieron el período de pago. Una vez satisfechos los atrasos, no se le podrá retener más del cincuenta (50%) por ciento de su ingreso neto".*

Surge de los autos del tribunal de instancia, que dicho foro determinó que el ingreso neto mensual del peticionario era de tres mil seiscientos trece dólares con veintisiete centavos ($3,613.27). Al aplicar las guías, determinó que la pensión alimentaria correspondiente para los menores Rafael y María Elena era de mil treinta y un dólares con veintinueve centavos ($1,031.29), retroactiva al 13 de septiembre de 1995. Analizó lo anterior y determinó emitir una orden de retención de mil treinta y un dólares con veintinueve centavos ($1,031.29).

Un cálculo matemático sencillo nos permite concluir que la cantidad a ser retenida por orden judicial no excede el cincuenta por ciento (50%) de los ingresos del peticionario. Por tal motivo actuó correctamente el tribunal al poner en efecto la misma luego de haberla dejado sin efecto previamente.

Finalmente, abordamos el planteamiento respecto a la alegada ausencia de notificación a todos los alimentistas sobre el proceso de prorrateo y la negativa del tribunal a consolidar los tres casos de alimentos.

El caso de *Galarza*, ██ es claro en cuanto a la importancia de la notificación a las partes que son indispensables en el pleito. En lo pertinente dispone lo siguiente:

*"Con el propósito de llenar la laguna procesal que existe en cuanto a los procedimientos relacionados con el prorrateo de ingresos retenidos en casos de alimentos de menores, y mientras no se aprueben las normas procesales pertinentes, el prorrateo que lleve a cabo el tribunal o el Administrador, según fuere el caso, como mínimo requiere una previa notificación a todos los alimentistas que puedan quedar afectados y una oportunidad para que éstos puedan expresarse. La notificación debe hacerse a no más tardar de los cinco (5) días después de haberse depositado el ingreso retenido por el patrono en el tribunal o en la Administración, según fuere el caso. Se le concederá a todos los alimentistas un término que no deberá exceder de diez (10) días a partir de la notificación, salvo que el tribunal o la Administración determinen que, por las circunstancias particulares del caso, se requiere más tiempo para que las partes comparezcan y se expresen sobre el prorrateo.*

*Para llegar a la conclusión de que era necesaria tal notificación, el Tribunal Supremo consideró el hecho de que en los casos donde existen varias órdenes de retención en favor de varios alimentistas y por exceder del límite estatutario la suma a retenerse, procede la retención mínima, y si ésta no satisface la pensión de los alimentistas previos, los alimentistas anteriores son partes indispensables en el procedimiento de prorrateo. De otro modo, los intereses de éstos se verían afectados en la medida en que se privarían de la garantía que representa el recibir, mediante el mecanismo de retención de ingresos, la totalidad de la pensión asignada por el tribunal."*

Surge de la resolución recurrida que, en el caso de autos, el tribunal de instancia ordenó la notificación a los alimentistas sobre la vista de prorrateo señalada para el 3 de marzo de 1999, aunque reconocemos que la copia de la notificación de la referida resolución no demuestra que se hubiere hecho.

No obstante, tomamos conocimiento de la minuta sobre la vista de prorrateo celebrada el 25 de marzo de 1999, en la Sala 609 de la Sala Superior de Caguas del Tribunal de Primera Instancia, a la cual asistieron la recurrida, Wilma Marie Ramos Berríos y el peticionario, Enrique López Cotto, con sus respectivos representantes legales, así como Sandra López Ríos, madre de los alimentistas cuyo caso se está ventilando en la Sala Superior de Fajardo, con su representante legal. Allí se llegaron a unos acuerdos en cuanto al prorrateo de las pensiones a los cuales se allanó la representante legal de los alimentistas cuyo caso estaba pendiente en Carolina. Evidentemente, todos los alimentistas tuvieron la oportunidad de ser oídos y participar en la vista, razón por la cual el planteamiento ante nos resulta académico.

Debemos ser enfáticos en señalar que es responsabilidad de la parte recurrente mantener informado a este

foro sobre el desarrollo procesal de los asuntos que ha traído ante nuestra consideración. La buena marcha del proceso judicial en nuestra isla es responsabilidad ineludible de todo miembro de la profesión legal. Deberes del abogado para con los tribunales, Criterio general, Código de Etica Profesional, 4 L.P.R.A. Ap. IX. Un abogado tiene el deber hacia el tribunal de ser conciso y exacto en el trámite y presentación de las causas, proveyendo toda la información necesaria para resolver las controversias. Canon 12 del Código de Etica Profesional, 4 L.P.R.A. Ap. IX. Los abogados no deben hacer planteamientos inmeritorios que recarguen el tiempo y el esfuerzo de los tribunales. *In re: Vélez Báez*, 128 D.P.R. 509 (1991).

Es doctrina reiterada que las determinaciones del tribunal de instancia deben ser objeto de gran deferencia, en ausencia de circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto. *Riley v. Rodríguez de Pacheco*, 119 D.P.R. 762 (1987).

No habiéndose demostrado las razones requeridas para intervenir con la discreción del foro de instancia, expedimos el auto y confirmamos la resolución objeto del recurso ante nos.

### III

De conformidad con los criterios anteriormente expuestos, se expide el auto y confirmamos la resolución recurrida.

Lo acordó y ordena el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 99 DTA 211

**1.** 15 U.S.C.A. sec. 1673.

**2.** Unido a dicho recurso presentó una *"Moción Urgente en Auxilio de Jurisdicción"*, solicitando la paralización de una vista de desacato a celebrarse en el Tribunal de Primera Instancia, Sala de Carolina, el 4 de marzo de 1999. Ante ello, emitimos resolución disponiendo que debía ser remitido al Circuito Regional IV de Carolina-Fajardo. No obstante, al día siguiente se nos informó que no se había presentado recurso alguno ante dicho Circuito.

Procedimos entonces a emitir una resolución para que la Secretaría clasificara la moción urgente como una separada del recurso de *certiorari*. Evaluada la misma, la cual fue identificada como Núm. KLAU-99-0002, denegamos la petición de paralizar la referida vista sobre desacato.

**3.** 32 L.P.R.A. Ap. III, R. 63.3.

**4.** 32 L.P.R.A. Ap. III, R. 43.3.

**5.** 32 L.P.R.A. Ap. III, R. 47.

**6.** Artículo 3 de la Ley Núm. 5 del 30 de diciembre de 1986, conocida como Ley Especial de Sustento de Menores, 8 L.P.R.A. sec. 502.

**7.** Art. 7 del Código Civil, 31 L.P.R.A. sec. 383.

**8.** El Artículo 143 del Código Civil, 31 L.P.R.A. sec. 562, incluye a los ascendientes y descendientes entre las personas que están obligadas a suministrarse alimentos entre sí.

9. 31 L.P.R.A. sec. 565.

10. El Artículo II, Sec. 7 de la Constitución del Estado Libre Asociado de Puerto Rico reconoce como derecho fundamental el derecho a la vida.

11. 31 L.P.R.A. sec. 561.

12. 8 L.P.R.A. sec. 518.

13. 8 L.P.R.A. sec. 523.

14. El mismo preceptúa:

*"En ningún caso, la cantidad a ser retenida del sueldo o salario del deudor alimentante para el pago de la pensión corriente de cada mes, para el pago de los atrasos, si los hubiere, y para sufragar el costo de la retención que realice el patrono o pagador, conforme se dispone en el inciso (9)(c) de esta sección, podrá exceder de los límites dispuestos por la Sección 303(b) del Consumer Credit Protection Act, no obstante lo dispuesto en la sec. 1130 del Título 32, parte del Código de Enjuiciamiento Civil. 8 L.P.R.A. sec. 523(6)."*

15. Esta disposición legal ha sido incorrectamente denominada como *"sección"* dentro de la Ley Especial de Sustento de Menores, a pesar de que realmente es un artículo de ley que está codificado en la Sección 1673 del 15 U.S.C.A.

16. No obstante, se eximió al patrono de responsabilidad por retener inadvertidamente cantidades en exceso de los límites dispuestos, siempre y cuando hubiese descansado de buena fe en los límites señalados bajo dicha Sección por el tribunal en su orden.

17. En el mismo caso se indica que en cuanto a las cantidades por concepto de atrasos de pensiones alimentarias, la retención de ingresos ordenada constituye un plan de pago para satisfacer una deuda alimentaria vencida. De otra parte, la cantidad retenida por concepto de pensión corriente va dirigida a que se le provean al menor los alimentos presentes, evitando así que se conviertan en atrasos.

18. 8 L.P.R.A. sec. 523(7).

19. *Supra*, pág. 419.

20. *Supra*, pág. 419.