Ramos Buonomo, Jueza Ponente
*940 TEXTO COMPLETO DE LA SENTENCIA
La Sra. Mariela Cadilla Rebolledo (la Sra. Cadilla) nos solicita la revocación de una sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, el 3 de diciembre de 1998. En dicha sentencia, el foro citado desestimó, por falta de jurisdicción, una demanda en la cual la Sra. Cadilla había solicitado que se fijaran alimentos permanentes en beneficio de dos hijas menores de edad habidas en su matrimonio con el Sr. Juan René Frontera (el Sr. Frontera).
Por los fundamentos que a continuación exponemos, revocamos la sentencia dictada por el Tribunal de Primera Instancia y devolvemos el caso para procedimientos ulteriores consistentes con lo aquí expresado.
I
La Sra. Cadilla y el Sr. Frontera se divorciaron en Michigan el 13 de febrero de 1995, por la causal de consentimiento mutuo, según sentencia emitida por el Tribunal de Circuito del condado de Oakland. Como parte de las estipulaciones del divorcio, la Sra. Cadilla y el Sr. Frontera acordaron, entre otros asuntos, que este último pagaría una pensión alimentaria provisional de trescientos dólares ($300.00) semanales para sus hijas menores y que, una vez el tribunal de dicho estado fijara la pensión permanente, ésta sería retroactiva al 1 de marzo de 1995. En la sentencia, el tribunal de Michigan reconoció, además, que la Sra. Cadilla y las menores regresarían a vivir permanentemente en Puerto Rico a partir del verano de 1995.
*941 La Sra. Cadilla se mudó a Puerto Rico con sus dos hijas en junio de 1995, sin que se hubiera fijado la pensión alimentaria permanente. El Sr. Frontera permaneció en Michigan hasta 1997, año en que se mudó al estado de Florida y en que contrajo matrimonio con la Sra. Julie A. Frontera, co-demandada en el caso de autos junto a la sociedad de gananciales compuesta por ambos. Durante todo este tiempo, el Sr. Frontera ha pagado la pensión provisional impuesta.
El 25 de noviembre de 1997, la Sra. Cadilla presentó una acción ante el Tribunal de Primera Instancia, solicitando que se fijaran alimentos permanentes en Puerto Rico a base de la Ley Orgánica de la Administración para el Sustento de Menores, Ley Núm. 5 de 30 de diciembre de 1986, 8 L.P.R.A. sees. 501 y ss. (Supl. 1998), toda vez que las menores están residiendo en Puerto Rico desde hace más de veinte (20) meses. El Sr. Frontera fue emplazado en Puerto Rico, el 30 de noviembre de 1997, mientras se encontraba de visita en la Isla.
El Tribunal de Primera Instancia, como hemos indicado, desestimó la acción por falta de jurisdicción. Fundamentó su decisión en que la Sra. Cadilla no había solicitado el registro en Puerto Rico de la sentencia de Michigan y en que la peticionaria era residente de Puerto Rico, ambos hechos contrarios, según determinó dicho foro, a las disposiciones de la Ley Interestatal Uniforme de Alimentos entre Parientes (LIUAP), Ley Núm. 180 de 20 de diciembre de 1997, 8 L.P.R.A. Seca. 541 y ss. (Supl. 1998).
En su escrito de apelación, la Sra. Cadilla señaló únicamente que erró el Tribunal de Primera Instancia al desestimar la acción de autos conforme a la LIUAP, supra, en especifico, por no haberse registrado la sentencia. Entiende la Sra. Cadilla que el Tribunal de Primera Instancia asumió jurisdicción sobre el Sr. Frontera conforme a la Regla 4.4 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 4.4 (Supl. 1998), por lo que sencillamente debió ordenar el registro de la sentencia y proceder con la modificación de la orden alimentaria.
El Sr. Frontera, sin someterse a la jurisdicción de este Tribunal, presentó ante nos una moción de desestimación, en la que argumenta que este Tribunal carece de jurisdicción para intervenir en este caso, en virtud de las disposiciones de la LIUAP, supra, y de lo resuelto por el Tribunal Supremo de Puerto Rico en Aponte v. Barbosa Dieppa, 146 D.P.R. _ (1998), 98 J.T.S. 105. Alega, en específico, que la Sec. 6.611 del Art. 1 de la LIUAP, 8 L.P.R.A.sec. 547b (Supl. 1998), requiere que se registre la orden en Puerto Rico y que la peticionaria, Sra. Cadilla, no sea residente de la Isla.
Luego de que la Sra. Cadilla expresara su oposición a la moción de desestimación del Sr. Frontera, y de que éste replicara, estamos en posición de resolver.
II
La ley federal modelo en la que se basa la LIUAP es la “Uniform Interstate Family Support Act” (UIFSA) (1996), y U.L.A. secs. 101 y ss. (Supl. 1999). La LIUAP fue aprobada el 20 de diciembre de 1997, poco después de haber sido instada la acción y emplazado el alimentante en el caso de autos.
La Asamblea Legislativa aprobó esta ley, Ley Núm. 180, mediante la cual adoptó en Puerto Rico literalmente la UIFSA, supra, bajo el nombre de Ley Interestatal Uniforme de Alimentos entre Parientes (LIUAP), supra; enmendó la Ley Orgánica de la Administración de Sustento de Menores, 8 L.P.R.A. sec. 501 y ss.; y derogó la Ley Uniforme de Reciprocidad para la Ejecución de Obligaciones sobre Alimentos, Ley 71 de 20 de junio de 1956, según enmendada. 32 L.P.R.A. secs. 3311 y ss. Véase Exposición de Motivos de la LIUAP. 
La LIUAP fue aprobada en Puerto Rico para cumplir con un requisito establecido por el Congreso de *942 Estados Unidos de que se aprobara una ley modelo uniforme (UIFSA) como condición para proveer fondos para los programas de sustento de menores y de asistencia pública a las familias necesitadas de los estados y de Puerto Rico. La adopción de la LIUAP tuvo el propósito, por lo tanto, de conformar nuestro estado de derecho en materia de alimentos con la política pública federal al respecto, según expuesta en la UIFSA.
Entre los principales objetivos de esta nueva ley, está el de lograr uniformidad en la aplicación de las disposiciones sobre pensiones alimentarias, ya sea entre cónyuges o ex cónyuges o las relativas a hijos o hijas menores. Para ello, la ley incorporó dos conceptos, desarrollados en legislaciones análogas: la doctrina de “una-orden-a-la-vez” (“one-order-at-a-time”) y la idea de “jurisdicción continua y exclusiva”. Bajo esos conceptos, en todo momento debe existir una única orden válida y, normalmente, sólo el estado que la emitió tendrá jurisdicción continua y exclusiva para modificar esa orden vigente. Todos los demás estados tendrán la obligación de conceder a esa orden original entera fe y crédito, pero no tendrán facultad para modificarla, a menos que el estado original pierda la jurisdicción continua y exclusiva.
El Tribunal Supremo de Puerto Rico tuvo la oportunidad de examinar la nueva legislación y considerar el alcance y la aplicación retroactiva de la medida en Aponte v. Barbosa Dieppa, supra. En dicho caso, analizando la aplicación retroactiva de la ley, dicho foro determinó que la LIUAP era de aplicación retroactiva, en primer lugar, por expresarlo claramente la ley en la Sec. 9.904 del Art. 1 y, en segundo lugar, por el hecho de que, al ser una ley de carácter remedial y procesal, esa retroactividad, en dicho caso, no afectaba derechos adquiridos. En ese sentido, entendió el Tribunal Supremo, se cumplía con los dos requisitos establecidos en el Art. 3 del Código Civil, 31 L.P.R.A. sec. 3: (1) “[l]as leyes no tendrán efecto retroactivo, si no dispusieran expresamente lo contrario” y (2) [e]n ningún caso podrá el efecto retroactivo de una ley perjudicar los derechos adquiridos al amparo de una legislación anterior”. Aponte v. Barbosa Dieppa, supra.
En el caso de autos, como en el de Aponte, supra, es necesario examinar, antes que nada, si de algún modo existe alguna disposición que impida la aplicación retroactiva de la LIUAP.
En el caso de Aponte v. Barbosa Dieppa, supra, se trataba de una solicitud de reducción de pensión alimentaria, razón por la cual el Tribunal Supremo determinó que el padre alimentante en dicho caso sólo tenía una “mera expectativa” de que se redujese su obligación alimentaria, a base de la ley anterior. En el caso de autos, podría argumentarse que, al disponer específicamente el ordenamiento puertorriqueño que en los casos de fijación o aumento de pensiones alimentarias, éstas serán retroactivas al momento en que se presentó la petición judicial, se podrían afectar derechos adquiridos al transferirse la acción a Florida, pues en dicho ordenamiento, de acuerdo a lo que hemos encontrado, el tribunal tiene discreción, en los casos de aumento de pensiones, para disponer o no la retroactividad. No obstante, al haberse dispuesto en la sentencia de divorcio de Michigan que la orden de alimentos permanentes será retroactiva al 1 de marzo de 1995, se elimina cualquier argumento en contra de la efectividad retroactiva de la orden de pensión permanente. El tribunal que finalmente fije la pensión deberá hacerla retroactiva a dicha fecha. En términos de la fecha de efectividad de la pensión alimentaria permanente, no existen, por lo tanto, en el caso que nos ocupa, derechos adquiridos por las menores alimentistas que puedan afectarse al fijarse la orden permanente.
Habiendo determinado, por lo tanto, que la LIUAP es la legislación a aplicar en el caso de autos, veamos cuál es el estado de derecho resultante bajo dicha ley. A modo de aclaración, debemos indicar que, dado el hecho de que, en este caso, examinamos una situación en la que vienen a colación dos estados de la Unión y el Estado Libre Asociado de Puerto Rico, usaremos mayormente, como base para nuestro análisis, la ley modelo, UIFSA, 9 U.L.A. secs. 101 y ss. (Supl. 1999), en lugar de la ley particular de una de las tres jurisdicciones, para tratar de precisar cuál es el estado de derecho aplicable a cada situación. Cuando la situación lo requiera, entonces nos referiremos a la disposición particular de la ley específica que entendamos aplique.
*943 Para determinar, en primer lugar, cuál es el estado con jurisdicción continua y exclusiva, es necesario examinar la See. 205 de UIFSA (1996), en su inciso (a)(1):

“See. 205. Continuing, Exclusive Jurisdiction.

(a) A tribunal of this State issuing a support order consistent with the law of this State has continuing, exclusive jurisdiction over a childsupport order:

(1) as long as this State remains the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued; or (Enfasis suplido.)

(2)... 9 U.L.A. sec. 205”. (Supl. 1999). 
En otras palabras, un estado conserva la jurisdicción continua y exclusiva, siempre y cuando todas las partes, incluyendo el alimentante, alimentista y el menor, continúen residiendo en dicho estado. En consecuencia, si todas las partes abandonan la jurisdicción original, ésta ya no posee la jurisdicción continua y exclusiva. En el caso de autos, por lo tanto, Michigan perdió la jurisdicción continua y exclusiva, pues todas las partes, tanto el alimentante como las menores alimentistas, dejaron de residir en dicho estado. Esto no quiere decir, sin embargo, que la orden emitida por el tribunal de dicho estado haya perdido su vigencia. En primer lugar, la Sec. 101 de la UIFSA define, en el inciso 21, lo que constituye una orden de pensión alimentaria:

“Sec. 101. Definitions. In this Act:

(1)...

(21) “Support order” means a judgment, decree, or order, whether temporary, final, or subject to modification, for the benefit of a child, a spouse, or a former spouse, which provides for monetary support, health care, arrearages, or reimbursement, and may include related costs and fees, interest, income withholding, attorney's fees, and other relief.

(22)...

9 U.L.A. sec. 101”. (Supl. 1999). 
Una orden de pensión alimentaria provisional en beneficio de un menor, por lo tanto, constituye una orden para los efectos de dicha ley. La See. 207 de la UIFSA (1996) dispone a su vez lo siguiente:

“See. 207. Recognition of Controlling Child-Support Order.

(a) If a proceeding is brought under this Act and only one tribunal has issued a child-support order, the order of that tribunal controls and must be so recognized. (Enfasis suplido.)

(b)...

9 U.L.A. sec. 207”. (Supl. 1999).
Es decir, cuando sólo se haya emitido una orden, sea ésta provisional o permanente, esa orden emitida es la *944 orden vigente. En el caso de autos, por lo tanto, la orden de Michigan, a pesar de ser provisional, es una orden vigente que, en caso de incumplimiento por el alimentante, podría ser ejecutada de acuerdo a las disposiciones de la ley. Aunqué el estado de Michigan haya perdido su jurisdicción continua y exclusiva, la orden emitida en dicho estado continúa vigente. Véase, en ese aspecto, UIFSA (1996), 9 U.L.A. sec. 205, comentarios, en la pág. 379, segundo párrafo (Supl. 1999).
Dado el hecho de que existe una orden vigente, el fijar una pensión permanente constituye por lo tanto una modificación a esa orden vigente. Las disposiciones a base de las cuales puede modificarse una orden de pensión alimentaria están incluidas en las Sees. 609 a 613 de la UIFSA, supra. Veamos.
La See. 609 de la UIFSA, en primer lugar, dispone lo siguiente:

“See. 609. Procedure to Register Child-Support Order of Another State for Modification.

A party or support enforcement agency seeking to modify, or to modify and enforceT a child-support order issued in another state shall register that order in this State in the same manner provided in Part 1 if the order has not been registered. A petition for modification may be filed at the same time as a request for registration? or later. The pleading must specify the grounds for modification.

9 U.L.A. sec. 609”. (Supl. 1999).
En otras palabras, para que se pueda modificar la orden emitida en otro estado, es necesario registrar la misma en el estado en el que se solicita la modificación. Esa solicitud de registro, puede efectuarse con anterioridad o al mismo tiempo en que se solicita la modificación de la orden vigente.
La pregunta obligada es, en qué estado se va a solicitar la modificación en un caso como el de autos. Las-Sees. 610 y 611 de la UIFSA nos proveen la respuesta. La See. 610 dispone que el efecto de registrar una orden de otro estado con el propósito de modificarla, trae como consecuencia que el tribunal en que se registra puede ponerla en vigor como si fuera una orden propia, pero sólo podrá modificarla si se cumplen con los requisitos de la Sec. 611. En específico:

“See. 610. Effect of Registration for Modification.

A tribunal of this State may enforce a child-support order of another state registered for purposes of modification, in the same manner as if the order had been issued by a tribunal of this State, but the registered order may be modified only if the requirements of Section 611 (Modification of Child-Support Order of Another State) have been met.

9 U.L.A. sec. 610”. (Supl. 1999).
La Sec. 611, a su vez, dispone lo siguiente, en lo pertinente al caso de autos:

“See. 611. Modification of Child-Support Order of Another State.

(a) After a child-support order issued in another state has been registered in this State, the responding tribunal of this State may modify that order only if Section 613 does not apply and after notice and hearing it finds that:

*945
(1) the following requirements are met:

(1) the child, the individual obligee, and the obligor do not reside in the isssuing state;

(ii) a petitioner who is a non resident of this State seeks modification; and

(iii) the respondent is subject to the personal jurisdiction of the tribunal of this State; or

(2) the child, or a party who is an individual, is subject to the personal jurisdiction of the tribunal of this State and all of the parties who are individuals have filed a [sic] written consents in the issuing tribunal for a tribunal of this State to modify the support order and assume exclusive, continuing jurisdiction over the order. However.

9 U.L.A. sec. 611". (Supl. 1999). 
En otras palabras, la Sec. 611 dispone que, a menos que todas las partes residan en el estado en que se registró la orden y en que se solicita la modificación —en cuyo caso aplicaría la See. 613— o que las partes se pusieran de acuerdo por escrito para que el estado donde el menor o una de las partes reside, adquiera jurisdicción, se tienen que cumplir con los requisitos enumerados en el inciso (1) de la See. 611 citada. Esos requisitos son: (1) que ninguna de las partes, ni el niño residan en el estado que emitió la orden original, (2) que la peticionaria o peticionario no resida en el estado en que está presentando la petición y (3) que el tribunal tenga jurisdicción sobre el demandado o demandada.
En el caso de autos, el primero de esos requisitos, evidentemente, se cumple, pues todas las partes dejaron de residir en Michigan.
El requisito de que se adquiera jurisdicción sobre la persona del demandado, por otro lado, también se cumplió, pues, como veremos, el Tribunal de Primera Instancia sí adquirió jurisdicción sobre el demandado. Véase, la Sec. 2.202 del Art. 1 de la LIUAP, inciso 1, 8 L.P.R.A. sec. 542 (Supl. 1998). De hecho, la sección análoga de la UIFSA, la See. 201, en su inciso 1, reconoce que el tribunal de un estado adquiere jurisdicción sobre un individuo cuando éste es emplazado en el territorio del estado, 9 U.L.A. sec. 201 (Supl. 1999). En ese sentido, dicha ley reconoce lo dispuesto por el Tribunal Supremo de Estados Unidos en Burnham v. Superior Court, 110 S.Ct. 2105 (1990), adoptado a su vez por el Tribunal Supremo de Puerto Rico en Peguero y otros v. Hernández Pellot, 139 D.P.R. _, 95 J.T.S. 156, de que el debido proceso de ley “no impide que un estado adquiera jurisdicción in personam sobre un demandado no domiciliado, si éste es emplazado personalmente mientras está dentro de la demarcación territorial del Estado donde se presentó la acción en su contra”. Peguero y otros v. Hernández Pellot, supra, a la pág. 343. 
Sin embargo, tiene razón el Sr. Frontera al argumentar que el último requisito no se cumple -que la peticionaria o peticionario no sea residente del estado en que se solicita la modificación- y que es en Florida donde tendría que dilucidarse la petición de alimentos permanentes, siempre y cuando sea la Sra. Cadilla quien solicita la modificación. De ser el Sr. Frontera quien solicita la modificación -mientras la situación de hechos del caso hubiese permanecido idéntica a la del momento- tendría entonces que ser en Puerto Rico el lugar en que tendría que dilucidarse la petición. En otras palabras, en el caso de autos, aunque técnicamente podía emplazarse al Sr. Frontera, el Tribunal de Primera Instancia no podía modificar la pensión alimentaria vigente porque no se cumple con todos los requisitos de la Sec. 611 de la UIFSA (1996) previamente citada.
Esta situación, no usual al ordenamiento jurídico puertorriqueño y que, por ende, a primeras luces, podría *946 parecer incorrecta o injusta, fue incorporada en la LIUAP con el propósito de lograr igualdad entre las partes, una especie de “rough justice”, como se indica en los comentarios a la See. 611 citada, y evitar que una parte se aproveche de las ventajas de utilizar su propio foro. Véase, en ese aspecto, UIFSA (1996), 9 U.L.A. sec. 611, comentarios, en la pág. 430, (Supl. 1999).
El haber incorporado esta disposición a la ley, obligando a aquél o aquélla que busca la modificación a acudir al foro contrario, plantea, sin embargo, una situación diferente a la que ocurre cuando ambas partes y los menores son residentes del mismo foro. Como sabemos, en Puerto Rico, si este fuera el caso, prevalecerían otras normas. 
Es necesario señalar que, de emitirse la pensión alimentaria permanente en Florida, dicho estado se convertirá en el estado con jurisdicción continua y exclusiva, y cualquier determinación posterior, en el futuro, tendrá que dilucidarse en Florida. Así lo dispone el inciso (d) de la Sec. 611 de la UIFSA (1996):

“See. 611. Modification of Child-Support Order of Another State.

(a)...

(b)...

(c)...

(d) On issuance of an order modifying a child-support order issued in another state, a tribunal of this State becomes the tribunal having continuing, exclusive jurisdiction.

9 U.L.A. sec. 611”. (Supl. 1999).
En otras palabras, de acuerdo a la UIFSA y la LIUAP, en el caso de autos, la petición de la Sra. Cadilla para que se fije la orden de pensión alimentaria permanente sólo puede dilucidarse en Florida y, una vez se fijé la misma, dicho estado adquiere jurisdicción continua y exclusiva.
La acción incoada por la Sra. Cadilla, sin embargo, no tenía que desestimarse. La LIUAP dispone que, en caso de ser inadecuado el foro ante el que se presenta la acción, dicho foro tiene la obligación de transferir el caso al foro con competencia. En el caso de autos, por lo tanto, el Tribunal de Primera Instancia teñía la obligación de remitir el expediente a los tribunales de Florida. Véase Sec. 3.306 del Art. 1 de la LIUAP, 8 L.P. R.A. sec. 543e (Supl. 1998).
El Tribunal de Primera Instancia, al remitir el caso a Florida, actúa como “tribunal iniciador”. El procedimiento para llevar a cabo la remisión del caso al otro estado está dispuesto en la Sec. 3.304 del Art. 1 de la LIUAP, 8 L.P.R.A. sec. 543c (Supl. 1998).
La pregunta que quedaría por hacemos es, ¿quién se ocuparía en Florida de defender los intereses de íás menores, hijas de las partes, representadas por la Sra. Cadilla? Veamos.
Al remitir el Tribunal de Primera Instancia la petición de la Sra. Cadilla al tribunal correspondiente en él estado de Florida, este último se convierte en el tribunal recurrido. Sec. 1.101 del Art. 1, inciso (17) de ia LIUAP, 8 L.P.R.A. see. 541 (Supl. 1998). Las disposiciones de la UIFSA, adoptadas en Florida a través dé la Ley 96-189 de 1996 y enmendadas por la Ley 97-170 de 1997, West’s F.S.A. secs. 88.0011 y ss. (Supl. 1999), *947 establecen las normas sobre cuáles son las facultades y deberes del tribunal recurrido. Entre dichas facultades, está la de emitir o poner en vigor la orden de pensión alimentaria, modificar la orden de pensión alimentaria para un menor o emitir una sentencia determinando la filiación. West's F.S.A. Sec. 88.3051 (Supl. 1999).
Para brindar apoyo a los tribunales o permitir directamente que se realicen administrativamente parte de las facultades que la ley provee, la UIFSA asigna responsabilidades, en cada estado adoptante, a lo que la ley denomina “ Support Enforcement Agency”, 9 U.L.A. sec. 307 (Supl. 1999), y “State Information Agency”, 9 U.L.A. sec. 310 (Supl. 1999).
En Puerto Rico, ambas facultades han sido asignadas a la Administración para el Sustento de Menores. Véanse, las Secs. 3.307 y 3.310 del Art. 1 de la LIUAP, 8 L.P.R.A. Secs. 543f y 543i (Supl. 1998). Al adoptarse la ley modelo en Florida se le asignaron las funciones correspondientes a la Division of Child Support Enforcement del Department of Revenue de dicho estado. Véanse, West's P.S.A. secs. 88.3071 y 88.3101 (Supl. 1999), y las notas a West's P.S.A. sec. 20.21.
Veamos cuál es el alcance de dicho apoyo. Las disposiciones de la UIFSA sobre cuáles son las responsabilidades específicas de ambos tipos de agencias para con el alimentante y el alimentista incluyen aspectos tales como la obligación de proveer información o de garantizar un debido proceso de ley, incorporando mecanismos tales como la notificación, el derecho a vista y otros. Esas disposiciones, según fueron adoptadas en Florida, están incluidas en las Seas. 88.3051, 88.3071 y 88.3101 de la ley de dicho estado y corresponden, esencialmente, a las secciones análogas de la ley modelo, Seco. 305, 307 y 310 de la UIFSA (1996), 9 U.L.A. sees. 305, 307 y 310 (Supl. 1999). Véanse, West's F.S.A. seas. 88.3051, 88.3071 y 88.3101 (Supl. 1999).
Al examinar las disposiciones de ley en Florida en tomo a la Division of Child Support Enforcement del Department of Revenue, sin embargo, encontramos que a dicha agencia se le han asignado responsabilidades análogas a las que tiene en Puerto Rico la Administración para el Sustento de Menores. Entre esas facultades, se encuentra la de proveer representación legal a los peticionarios en acciones de alimentos. West's P.S.A. sees. 20.21; West's P.S.A. sec. 409.2554(8) (Supl. 1999).
El alcance de la facultad de la Division of Child Support Enforcement del Department of Revenue de representar a un peticionario o peticionaria en una acción de alimentos, cuando se examina a primera vista las disposiciones citadas de la legislación existente, parece ser limitado. En las mismas, se limita la representación legal de los peticionarios a aquellos recipientes de asistencia pública. El Tribunal Supremo de Florida, sin embargo, ha determinado que los estados deben proveer a las familias no necesitadas de asistencia pública, los mismos servicios que se proveen a los beneficiarios de dicha ayuda. Véase, Thaysen v. Thaysen, 583 So. 2d 663, 666 (Fla. 1991). En consecuencia, en Florida, la Division of Child Support Enforcement del Department of Revenue tendría la responsabilidad, dado que el caso de Thaysen, supra, no ha sido revocado, de proveer representación legal a todo peticionario o peticionaria de aumento de pensión alimentaria, aunque éste no sea un recipiente de asistencia pública.
De todos modos, como se indica en Thaysen, supra, la Division of Child Support Enforcement del Department of Revenue recupera los costos, pues dicho departamento está autorizado a reclamar del alimentante los gastos administrativos y el tribunal deberá ordenar al alimentante el pago de éstos sin que sea necesario ni siquiera presentar un memorando de costas bajo juramento. Véanse, F.S.A. 409.2554 (11) y P.S.A. 409.2567 (Supl. 1999). 
En el caso de autos, por lo tanto, sería responsabilidad del Child Support Enforcement Program del *948 Department of Revenue de Florida proveer a la Sra. Cadilla la representación legal necesaria, sin que ésta tenga que estar presente en los procedimientos en Florida.
El procedimiento interestatal propuesto por la UIFSA y, en consecuencia, por la LIUAP, es esencialmente similar al que existía bajo la ley anterior en Puerto Rico, Ley Uniforme de Reciprocidad para la Ejecución de obligaciones sobre Alimentos, Ley Núm. 71 de 20 de junio de 1956, 32 L.P.R.A. sees. 3311 y sa., vigente hasta que entró en vigor la LIUAP. Aunque la nueva legislación propone cambios importantes, como los conceptos previamente discutidos de una-orden-a-la-vez y de jurisdicción continua y exclusiva, entre otros, el procedimiento de que un estado iniciador remite los documentos establecidos por ley al estado recurrido, es muy similar al dispuesto por la ley anterior. 
En relación con la determinación del Tribunal de Primera Instancia sobre la necesidad de registrar la sentencia en Puerto Rico, entendemos que, dados los hechos del caso, no era necesario registrar dicha sentencia en Puerto Rico, puesto que este foro, como hemos visto, no tiene jurisdicción para modificar la orden de alimentos vigente, por no cumplirse con los requisitos de la Sec. 6.611 del Art. 1 de la LIUAP, supra, y lo que procede es remitir la petición al estado de Florida. Para ello, no es necesario el registro. Veamos.
Como indicamos anteriormente, la UIFSA requiere el registro de la sentencia emitida en otro estado como una condición previa a la modificación de la misma, modificación que, de todos modos, sólo puede ocurrir si se cumplen los requisitos de la ley. También es necesario registrar la orden cuando se desea que el tribunal local tenga autoridad para ponerla en vigor como si fuese una orden propia, con la salvedad, ya discutida, de que ese tribunal local no podrá modificarla, a menos que se cumplan los requisitos previamente citados.
En efecto, aunque la UIFSA fomenta el proceso de registro como una manera de propiciar el que se reconozca la validez de la orden vigente y la autoridad del tribunal que la emitió a conservar su jurisdicción continua y exclusiva, no necesariamente fomenta el registro por el mero hecho del registro. Véase, en ese aspecto, UIFSA (1996). 9 U.L.A. see. 601, comentarios, en lapág. 419, último párrafo (Supl. 1999).
De hecho, la UIFSA permite varios procedimientos sin necesidad de registro. Permite, por ejemplo, enviar directamente al patrono del alimentante la orden de retención de ingresos emitida en el otro estado sin intervención del tribunal recurrido o de agencia alguna, cuando se conoce el patrono del alimentante. See. 501 de la UIFSA (1996), 9 U.L.A. sec. 501 (Supl. 1999). También permite a una parte solicitar directamente, a través de una agencia administrativa en el otro estado, que se ponga en vigor una orden alimentaria o una ordeh de retención, sin que sea preciso, necesariamente, registrarla, siempre y cuando el alimentante no cuestione la validez de la orden o su ejecución. See. 507 de la UIFSA (1996); 9 U.L.A. sec. 507 (Supl. 1999).
En ese sentido, cuando se presenta ante un tribunal local una petición de aumento de una orden de pensión alimentaria emitida en otro estado y el tribunal local no tiene jurisdicción para modificarla, sino que sólo va a actuar como tribunal iniciador, la redacción de la ley no indica que sea necesario, para llevar a cabo ese proceso, el registro. Señala que basta con presentar una moción (“filing a petition”) de acuerdo a los procedimientos de la UIFSA. Veamos en ese sentido lo dispuesto por la See. 303 de la UIFSA (1996):

“See. 304. Duties of Initiating Tribunal.

(a) Upon the filing of a petition authorized by this Act, an initiating tribunal of this State shall forward three copies of the petition and its accompanying documents:

(1) to the responding tribunal or appropiate support enforcement agency in the responding state; or

*949
(2) if the identity of the responding tribunal is unknown, to the state information agency of the responding state with a request that they be forwarded to the appropiate tribunal and that receipt be acknowledged.

(b)...

9 U.L.A. sec. 304”. (Supl. 1999).
En el caso de autos, la orden emitida por Michigan, como hemos visto, no podía modificarse en Puerto Rico. Por lo mismo, el Tribunal de Primera Instancia no tenía que requerir que se registrara la misma en Puerto Rico, pues lo que procedía era remitir la petición de la Sra. Cadilla a Florida, algo para lo cual no era necesario registrar la orden original. En resumen, en el caso de autos, el Tribunal de Primera Instancia, en lugar de desestimar la acción, debió haber remitido la petición de la Sra. Cadilla al foro correspondiente en el estado de Florida.
Puesto que el padre reside en Orlando, Florida, el Tribunal de Primera Instancia tiene dos opciones: remitir la petición de la Sra. Cadilla al tribunal o remitirla a la agencia de sustento de menores, Division of Child Support Enforcement del Department of Revenue de Florida, de acuerdo a la Sec. 304 de la UIFSA, supra. De remitirla al tribunal, deberá enviarla al tribunal correspondiente del Condado de Orange, donde reside el Sr. Frontera. Si el Tribunal de Primera Instancia no conoce cuál es específicamente el tribunal recurrido al que debe enviar la petición, entonces deberá enviarla a la Division of Child Support Enforcement del Department of Revenue de Florida, para que dicha agencia la presente en el tribunal que corresponda y que éste certifique su recibo al Tribunal de Primera Instancia y a la representación legal de la Sra. Cadilla. Sec. 304, supra. 
III
Por último, sobre el señalamiento del Sr. Frontera de la falta de jurisdicción de este Tribunal, el mismo no procede. Aunque el Tribunal de Primera instancia, como hemos visto, no tenía jurisdicción para modificar la orden emitida en Michigan, tenía un deber positivo de analizar la petición y remitir, la misma al tribunal correspondiente. En ese sentido, no procedía la desestimación de la demanda por falta de jurisdicción, y dicho foro tenía autoridad para entender en el asunto, a base de las disposiciones de la LIUAP previamente citadas. De todos modos, este Tribunal tiene jurisdicción para revisar la sentencia del Tribunal de Primera Instancia hubiese tenido o no dicho foro jurisdicción sobre la materia en el caso de autos- en virtud del Art. 4.002 de la Ley de la Judicatura de Puerto Rico de 1994,4 L.P.R.A. 22k (Supl. 1998), y de la Regla 13 del Reglamento del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XXII-A, R. 13.
IV
Por los fundamentos antes expuestos, este Tribunal revoca la sentencia del Tribunal de Primera Instancia en lo referente a la desestimación del caso e instruye a dicho foro a que remita la petición de la Sra. Cadilla al tribunal correspondiente en el estado de Florida, o a la Division of Child Support Enforcement del Department of Revenue de Florida, para su registro y modificación, de conformidad con las disposiciones de la LIUAP, supra.
Así lo acordó y manda el Tribunal y lo certifica la señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
*950 ESCOLIOS 2000 DTA 53
1. Como parte de la sentencia, el tribunal de Michigan refirió el caso al Oakland County Friend of the Court, para que se ocupara de la investigación, recomendaciones y vista en torno a la pensión alimentaria permanente, lo cual nunca se llevó a cabo.
2. Es conveniente recalcar que el texto de la LIUAP, tal como fue adoptado en Puerto Rico, es una traducción literal de la UIFSA (1996). Así, la Sec. 9.905 de la Ley Núm. 180 de 1997, supra, específicamente dispone que, de haber discrepancia entre dicha ley y el texto en inglés, prevalecerá este último. En la Sec. 9.906 de la misma Ley Núm. 180 de 1997, supra, de hecho, se incluyó copia del texto en inglés.
3. Para obtener una idea de esas legislaciones paralelas, y la reutilización de algunos de esos conceptos en la UIFSA, véase, Tina M. Fielding, The Uniform Interstate Family Support Act: The New URESA; 20 U Dayton L. Rev. 425 (1994).
4. El ordenamiento sobre alimentos de menores en Puerto Rico específicamente dispone que las reducciones en las pensiones alimentarias serán efectivas desde la fecha en que el tribunal o el Administrador de Sustento de Menores tome la determinación al respecto. Véase, el Art. 19 de la Ley Núm. 5 de 1986, supra.
5. En relación con las disposiciones en Puerto Rico sobre la retroactividad de la fijación o aumento de pensiones alimentarias, véase, el Art. 147 del Código Civil, 31 L.P.R.A. sec. 566 (Supl. 1998), y el Art. 19 de la Ley Núm. 5 de 1986, supra. En el caso de Florida, véase, Barr v. Barr, 724 So. 2d 12001 1202 (Fla. 1st DCA 1998).
6. En Puerto Rico, la disposición análoga es la Sec. 2.205 del Art. 1 de la LIUAP, 8 L.P.R.A. sec. 542d (Supl. 1998).
7. En Puerto Rico, la disposición análoga es la Sec. 1.101 del Art. 1 de la LIUAP, 8 L.P.R.A. sec. 541 (Supl. 1998).
8. El proceso de registro está indicado en la See. 602 de la UIFSA (1996), 9 U.L.A. sec. 602 (Supl. 1999).
9. En Puerto Rico, la disposición análoga es la Sec. 6.611 del Art. 1 de la LIUAP, 8 L.P.R.A. sec. 547b (Supl. 1998).
10. En el caso de Burnham, supra, un padre residente del estado de Nueva Jersey que fue emplazado al visitar California con el propósito de ver a sus hijos y realizar otras gestiones de negocios, el Tribunal Supremo federal, mediante decisión de pluralidad, le permitió al foro estatal asumir jurisdicción sobre el demandado no domiliciado emplazado, aunque el motivo de su visita a California no estaba relacionado con la causa de acción presentada en su contra. Para una discusión de la relación del caso de Burham supra, y las disposiciones de la UIFSA, véase, UIFSA (1996), 9 U.L.A. see. 201, comentarios, en la pág. 373, primera columna, cuarto párrafo (Supl. 1999); 9 U.L.A. sec. 611, comentarios, en la pág. 430, segunda columna, segundo párrafo (Supl. 1999).
11. En Puerto Rico, la Regla 3.4 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 3.4 (Supl. 1998), dispone que en los casos de reclamaciones de alimentos, el pleito se tramitará “en la sala correspondiente a la residencia del demandante". Esta regla fue interpretada por el Tribunal Supremo de Puerto Rico en Guadalupe Viera v. Morell, 115 D.P.R. 4, 10 (1983), caso en que dicho foro determinó “que el interés público no puede ser otro que el de proveer para la litigación de estas acciones el foro más conveniente al bienestar de los menores desde el punto de vista de la rapidez y la economía en el trámite”.
12. El resultado del caso de Aponte v. Barbosa Dieppa, supra, en este sentido, parece ser confuso. Aunque el Tribunal Supremo, a la pág. 21 del caso citado, menciona la disposición que permite la transferencia, en otras partes de la opinión (véase, Aponte v. Barbosa Dieppa, supra, a la pág. 20, al final del segundo párrafo) parece insinuar que el alimentante en dicho caso tendría que presentar su solicitud en el estado de Massachusetts. Lo anterior es corroborado por la opinión disidente del Juez Fuster Berlingeri, la cual presenta, como alternativa para el Sr. Barbosa Dieppa, el que el Tribunal de Primera Instancia remita el caso como tribunal iniciador, al tribunal de Massachusetts, situación que, según el Juez Fuster, no fue considerada como alternativa por la mayoría.
*951 13. Debemos señalar, como un comentario al margen, que la definición de “tribunal iniciador” que aparece en el inciso (8) del Art. 1, Sec. 1.101 de la LIUAP, supra, es bastante confusa. Es conveniente utilizar, en ese sentido, la versión en inglés de dicha ley, a tenor con lo dispuesto en la Sec. 9.906 del Art. 1 de la LIUAP, historial, a la pág. 92, 8 L.P.R.A. sec. 541 (Supl. 1998).
14. En específico, la See. 307 de la UIFSA dispone:

“See. 307. Deberes de la agencia de sustento de menores.

(a) La agencia de sustento de menores, a solicitud del peticionario, proveerá los servicios necesarios en relación con los procedimientos que establece esta ley.

(b) La agencia de sustento de menores al proveer servicios al peticionario deberá:

(1) tomar todas las medidas necesarias para que el tribunal competente en este estado o en otro estado asuma jurisdicción sobre el recurrido.

(2) solicitar al tribunal competente que señale la fecha, hora y lugar para la celebración de una vista.

(3) hacer un esfuerzo razonable para obtener toda la información pertinente, incluyendo información sobre el ingreso y los bienes de las partes.

(4) enviar copia al peticionario de la notificación escrita recibida de un tribunal iniciador, recurrido o registrador, dentro de dos días de haberla recibido, excluyendo los sábados, domingos y días feriados.

(5) enviar copia al peticionario de las comunicaciones escritas del recurrido o de su abogado dentro de dos días de haberlas recibido, excluyendo los sábados, domingos y días feriados.

(6) notificar al peticionario si no se puede adquirir jurisdicción sobre el recurrido.

(c)...

9 U.L.A. sec. 307 (Supl. 1999).” (Traducción nuestra.)
15. En dicho caso, una madre custodia solicitó un aumento en la pensión alimentaria que proveía el padre, siendo ambos residentes de Florida, y estando el padre al día en sus pagos. Un abogado del Department of Health and Rehabilitative Services (HRS), responsable en aquel momento de las gestiones en torno al cobro de pensiones alimentarias, representó a la madre en el proceso. Tanto el tribunal de primera instancia como el tribunal apelativo habían determinado que el HRS no estaba facultado para representar a la madre. El Tribunal Supremo de Florida, sin embargo, determinó lo contrario, basándose en la See. 654 (6) (A) del Social Security Act, 42 U.S.C. sec. 654 (6)(A).
16. La Sec. 409.2567 dispone, en lo pertinente, que “[t]he Court shall order payment of administrative costs without requiring the department to have a member of the bar testify or submitt an affidavit as to the reasonableness of the costs”. West's F. S. A. sec. 409.2567 (Supl. 1999).
17. Los deberes del tribunal de Puerto Rico como estado iniciador estaban dispuestos en la Sec. 13 de la Ley Núm. 71 de 1956, supra, 32 L.P.R.A. sec. 3313f. Para una descripción del procedimiento bajo la ley anterior en Puerto Rico, véase, Sarah Torres Peralta, La Ley Especial de Sustento de Menores de 1994 y el Derecho de Alimentos en Puerto Rico, San Juan, Publicaciones STP, Inc., Edición Especial 1997, págs. 12.712.10. Para obtener una idea de los cambios en general que plantea la nueva legislación, en relación con la anteterior, véase, 9 U.L.A. 348, notas preliminares, en las págs. 351-354 (Supl. 1999).
18. Por la complejidad que pudiera acarrear este trámite para las distintas Salas del Tribunal de Primera Instancia a través *952 de toda la Isla, sería muy útil y conveniente que la Oficina de Administración de los Tribunales diseñe y ponga en vigor un procedimiento uniforme a ser utilizado por las secretarias de nuestros tribunales.