CARMEN GUADALUPE VIERA, demandante y peticionaria, *v.* JOHN MORELL, demandado y recurrido.

*Número:* O-83-367        *Resuelto:* 27 de diciembre de 1983

6

*Luis R. Torres,* abogado de la peticionaria; *Ismael Cuevas Veláz-quez,* abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR IRIZARRY YUNQUÉ emitió la opinión del Tribunal.

En un incidente para el cobro de pensiones alimenticias atrasadas impuestas al padre de unos menores, éste

invocó y el tribunal de instancia le reconoció el derecho a descontar de lo adeudado determinados pagos hechos por él en relación con gastos extraordinarios para beneficio de los menores. La madre de los menores, promovente en instancia del incidente, ha recurrido ante nos. Plantea que no procedían dichos descuentos y que erró, además, el tribunal, al negarse a trasladar el caso a la sala en cuya demarcación geográfica residen los menores. En cuanto al traslado, no tiene razón. Aparte de que fue tardío su planteamiento —lo hizo después de dictada la resolución sobre alimentos— resolvemos que el lugar de la residencia de los menores no es por sí solo determinante de a qué sala corresponde intervenir en el asunto, debiendo considerarse, a tal efecto, la totalidad de las circunstancias pertinentes al logro de la más pronta, económica y justa decisión. En cuanto a permitir los descuentos erró el tribunal de instancia pues, tratándose de una pensión alimenticia impuesta por el tribunal a un padre que no tiene la patria potestad y custodia sobre los menores, no puede dejarse a su arbitrio la decisión de a qué gastos debe aplicarse la pensión ni la forma de satisfacerla.

I

*Los hechos*

En el matrimonio que existió entre la Sra. Carmen Guadalupe Viera y el Sr. John Morell se procrearon tres hijos, un varón y dos hembras, que para la fecha en que se inició la acción que aquí nos ocupa —5 de enero de 1983— contaban diez y nueve años el varón, y catorce y doce años de edad, respectivamente, las dos niñas. Decretado el divorcio entre dichos cónyuges por el Tribunal Superior, Sala de Caguas, se concedió a la madre demandante la custodia y patria potestad sobre los tres hijos, y se dispuso que el padre (demandado) pasaría para dichos menores una pensión alimenticia de $400 mensuales, más tarde rebajada a $300 mensuales.

El 5 de enero de 1983 la demandante presentó moción

ante la sala sentenciadora en que alegó que el padre adeudaba $8,000 por concepto de atrasos en el pago de la pensión y solicitó se le declarara incurso en desacato. El padre compareció y aceptó que un cómputo hecho a partir del 29 de mayo de 1982, fecha en que se estipuló una determinada cantidad como adeudada, arroja un balance a la fecha de la moción de $8,600, pero opuso que a dicha suma debían acreditársele pagos hechos por él por concepto de tratamiento dental a una de las hijas; matrícula y gastos escolares, para ambas; honorarios de abogado que pagó por el hijo en relación con un asunto judicial en que se vio afectado; costo de tres vehículos de motor que en diferentes fechas proporcionó a éste; y pagos hechos a la abuela paterna de los niños por gastos por ella incurridos para alimentación, ropa y otros, para beneficio de los menores.

Luego de dar audiencia a las partes el 6 de abril de 1983 y recibir las pruebas que tuvieron a bien aportar, el tribunal concluyó que los pagos hechos por el padre por los expresados conceptos deben deducirse del balance adeudado; acreditó $1,200 que éste había consignado, y falló que se encuentra al día en el pago de la pensión. En consecuencia, desestimó la moción de desacato en corte abierta. Contra esta decisión, y la negativa del tribunal a trasladar el caso a la Sala de Humacao, dentro de cuya demarcación territorial residen en la actualidad los menores —petición hecha por moción de 4 de mayo de 1983—, la demandante ha recurrido mediante solicitud de *certiorari*.

Argumenta ante nos la peticionaria que los siguientes descuentos o créditos autorizados por el tribunal recurrido son improcedentes: $1,440 pagados por el demandante por tratamiento dental a una hija; $2,400 por pagos de matrícula y otros gastos escolares; $700 de honorarios de abogado satisfechos en relación con un caso en que se vió afectado el hijo; $4,600 invertidos en la compra de tres automóviles para dicho hijo; $1,500 pagados a una tercera persona como indemnización por daños ocasionados por el hijo en un acci-

dente; $1,800 rembolsados a la abuela paterna de los menores por gastos incurridos por ella en alimentación, ropa y otros similares para los menores.

Por resolución de 23 de junio de 1983 requerimos del demandado recurrido que mostrara causa por la cual no debíamos expedir el auto solicitado y modificar la resolución recurrida para limitar los descuentos a las partidas por concepto de gastos dentales y reembolsos hechos a la abuela de los menores. Hemos considerado detenidamente los argumentos del recurrido en su escrito sobre mostración de causa, hemos examinado igualmente los autos originales, y estamos en condiciones de resolver.

## II

*La cuestión del traslado*

■ Dispondremos en primer lugar de lo relativo al traslado. Aparte de que el incidente sobre alimentos fue promovido por la demandante y madre de los niños ante la sala de instancia, habiéndose sometido con ello a su competencia, su solicitud fue tardía. Fue presentada después de la audiencia en que las partes adujeron sus pruebas y después de haber recaído resolución sobre el incidente de desacato. Esto bastaría para mantener la decisión del tribunal de instancia. Empero, parece oportuno que consideremos el tema con algún detenimiento.

De conformidad con la Regla 3.4 de Procedimiento Civil, en los casos de reclamación de alimentos "el pleito se tramitará en la sección o sala correspondiente a la residencia del demandante". Cabe señalar que aquí no se trataba de la tramitación de un pleito sobre alimentos y sí de un incidente para hacer cumplir la disposición sobre alimentos para los menores tomada al dictarse sentencia de divorcio entre sus padres. Véase *Medina* v. *Tribunal Superior*, 104 D.P.R. 346 (1975), opinión concurrente del Juez Asociado Señor Díaz Cruz a la que se unieron cinco magistrados de este Tribunal en que reafirmamos, págs. 360-361, que es "principio, en

divorcio y sus acciones derivadas de alimentos y custodia, de que la corte que originalmente adqui[ere] jurisdicción sobre las partes la retiene para ulteriores providencias, sin que para ello sea necesaria la residencia continua dentro de su territorio o demarcación".

Independientemente de que así sea, la residencia de los menores no puede considerarse como el único factor determinante de qué sala es la competente. La razón de la disposición de la Regla 3.4, que hemos citado, cuya procedencia la hallamos en el Art. 81 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 407, según enmendado por la Ley Núm. 16 de 21 de abril de 1954, fue expresada en *Millán Rivera* v. *Solís Lazú*, 85 D.P.R. 478, 482 (1962). Allí señalamos que la enmienda del 1954 al mencionado Art. 81 restauró el anterior concepto de la sede territorial para el caso especial de alimentos de menores por estar ello revestido de "un alto interés público".

▪ Ese interés público no puede ser otro que el de proveer para la litigación de estas acciones el foro más conveniente al bienestar de los menores desde el punto de vista de la rapidez y la economía en el trámite. El lugar de la residencia de los menores es, como regla general, el más conveniente desde estos puntos de vista. No lo es, sin embargo, en el caso de autos. Veamos.

▪ La única circunstancia que relaciona a los menores con Humacao es el hecho de residir en una urbanización en dicho municipio. Frente a ese hecho aislado están los siguientes, según surgen de los autos ante nos: las niñas estudian en un colegio privado en Caguas; el dentista que las atiende tiene su consultorio en Caguas; su señora madre se dedica a la venta de automóviles en un comercio conocido por Miniauto radicado en Caguas; en Caguas se divorciaron sus padres y allí se ha tramitado todo lo relacionado con el pago de la pensión alimenticia, sin objeción, hasta que recayó la resolución objeto del presente recurso. Añádase a esto que Caguas y Humacao se conectan por una moderna

autopista que permite que una persona pueda desplazarse de una ciudad a la otra en cuestión de minutos. Y nótese que el abogado que representa a los menores ante el tribunal de instancia y ante nos, tiene sus oficinas en Hato Rey, mucho más distante de Humacao que de Caguas. Todas estas circunstancias demuestran que se cumple mejor el propósito legislativo de rapidez y economía manteniendo todo el trámite en Caguas. Trasladarlo a Humacao satisfaría la letra de la Regla 3.4, pero violaría su claro propósito. Resolvemos, por tanto, que la determinación de cuál ha de ser la sala competente para ventilar una cuestión de alimentos debe depender, además del lugar de residencia del alimentista, de todos los factores que en un balance de conveniencias aseguren la más pronta y económica tramitación del asunto.

## III

### A. *Concepto de los alimentos*

█ La obligación de los padres de proveer alimentos a sus hijos tiene dos bases estatutarias. La primera es parte del contenido jurídico del ejercicio de la patria potestad y emana del Art. 153 del Código Civil, 31 L.P.R.A. sec. 601.([1]) M. Albaladejo, *Curso de Derecho Civil*, Barcelona, Ed. Bosch, 1982, T. IV, pág. 17; F. Puig Peña, *Compendio de Derecho Civil Español*, Madrid, Eds. Pirámide, 1976, T. V, pág. 504; V. Colón Rodríguez, *La institución de alimentos ante una nueva política pública del Estado*, 42 Rev. Jur. U.P.R. 305 (1973).

---

([1]) Dice así:

"Sec. 601. *Facultades y deberes de los padres*

"El padre y la madre tienen, respecto de sus hijos no emancipados:

"1. El deber de alimentarlos, tenerlos en su compañía, educarlos e instruirlos con arreglo a su fortuna, y representarlos en el ejercicio de todas las acciones que puedan redundar en su provecho.

"2. La facultad de corregirlos y castigarlos moderadamente o de una manera razonable."

La otra base estatutaria de la obligación alimenticia surge del Art. 143 del Código Civil, 31 L.P.R.A. sec. 562,(²) que es parte del articulado que regula lo concerniente a alimentos entre parientes. Se percibe con toda claridad que la obligación del alimentante que emana de estas disposiciones, en lo que respecta a un hijo suyo sobre el cual no tiene la patria potestad, surge y opera de manera distinta a cuando la tiene.

En el caso del Art. 153, es decir, la obligación alimenticia que emana del ejercicio de la patria potestad, se parte del supuesto de que el alimentista menor de edad está bajo la custodia del padre que ejerce sobre él la patria potestad, o de ambos si están casados entre sí.(³) Como señala Beltrán de Heredia,(⁴) no se trata estrictamente de una obli-

---

(²) Este artículo, según enmendado por la Ley Núm. 5 de 11 de septiembre de 1979, pág. 1007, L.P.R., 1979, dice:

"Artículo 143.—

"Están obligados recíprocamente a darse alimentos, en toda la extensión que señala el artículo precedente:

"1. Los cónyuges.

"2. Los ascendientes y descendientes.

"3. El adoptante y el adoptado y sus descendientes.

"Los hermanos se deben recíprocamente aunque sólo sean uterinos, consanguíneos o adoptivos los auxilios necesarios para la vida, cuando por un defecto físico o moral, o por cualquier otra causa que no sea imputable al alimentista, no puede éste procurarse su subsistencia. En estos auxilios están, en su caso, comprendidos los gastos indispensables para costear la instrucción elemental y la enseñanza de una profesión, arte u oficio."

El artículo a que se refiere como el precedente, es decir, el 142 (31 L.P.R.A. sec. 561), define lo que son alimentos así:

"Sec. 561. *Alimentos, definición de*

"Se entiende por alimentos todo lo que es indispensable para el sustento, habitación, vestido y asistencia médica, según la posición social de la familia.

"Los alimentos comprenden también la educación e instrucción del alimentista, cuando es menor de edad."

(³) Recuérdese que a partir del 2 de junio de 1976 en que se enmendó el Art. 152 del Código Civil —Ley Núm. 99 de esa fecha— la patria potestad sobre los hijos no emancipados corresponde a ambos padres conjuntamente.

(⁴) P. Beltrán de Heredia, *La obligación legal de alimentos entre parientes*, Salamanca, Eds. Anaya, 1958, T. III, Núm. 3, págs. 16-17. Véase, además, *López Martínez* v. *Yordán*, 104 D.P.R. 594 (1976).

gación alimenticia independiente o autónoma, sino que está incorporada al conjunto más amplio de deberes y derechos que representa la patria potestad, entre los cuales se encuentra el deber de convivir con los hijos, alimentarlos en su mesa, educarlos, guiarlos y representarlos. Este deber de alimentación, ínsito a la patria potestad, no depende de un estado de necesidad del hijo, pues éste incluso podría tener bienes suficientes para su sostenimiento y aún tener derecho a ser alimentado por sus padres con patria potestad, sino que se basa en el hecho mismo de la generación.[5]

La obligación alimenticia que surge del Art. 143 se refiere al caso del padre o de la madre de hijos no emancipados que no viven en su compañía y sobre los cuales no tiene la patria potestad, y a hijos y otros parientes, no importa su edad, que tengan necesidad de alimentos, y siempre que el alimentante cuente con recursos para proveerlos. A diferencia de la obligación bajo el ejercicio de la patria potestad, el deber de proveer alimentos bajo el articulado del Código que regula los alimentos entre parientes —142 al 151 (31 L.P.R.A. secs. 561 a 570)— se basa en el estado de necesidad del hijo y depende de la condición económica del padre alimentante. Se distingue, además, en que la obligación es exigible cuando se demuestra la necesidad de alimentos del hijo y son reclamados judicialmente. Art. 147 (31 L.P.R.A. sec. 566).

---

[5] Valga señalar, de paso, que disuelto por divorcio el matrimonio entre los padres del hijo no emancipado, la patria potestad y custodia han de adjudicarse al padre o a la madre, según lo determine el tribunal en su sentencia de divorcio, pero no a ambos. Así se desprende del Art. 107 del Código Civil, 31 L.P.R.A. sec. 383, según enmendado por la Ley Núm. 100 de 2 de junio de 1976. Supone este artículo que la patria potestad y la custodia deben corresponder ambas a uno solo de los cónyuges una vez se decreta el divorcio. Esta interpretación armoniza el texto del Art. 107 con el del Art. 164 (31 L.P.R.A. sec. 632), enmendado por la Ley Núm. 99 de esa misma fecha (2 de junio de 1976). El padre del hijo no emancipado a quien el tribunal otorgue la patria potestad y la custodia, las perderá si voluntariamente le abandonare por un período mayor de seis meses, debiendo seguirse para ello el procedimiento establecido en dicho Art. 164.

El concepto de alimentos, según los define el Art. 142 (31 L.P.R.A. sec. 561), incluye todo lo que es indispensable para el sustento, habitación, vestido y asistencia médica, según la posición social de la familia. Comprende, además, la educación del alimentista, cuando es menor de edad. Esta enumeración que hace el Código cubre todas las necesidades básicas de un ser humano, tanto físicas como intelectuales. En el aspecto de educación e instrucción la duración de la obligación se ha limitado a la minoridad del alimentista, pero los tratadistas están de acuerdo en que los términos del Código no pueden entenderse en sentido tan absoluto y restringido de modo que si éste se ha iniciado en un oficio o carrera durante la minoridad, tiene derecho a exigir que el alimentante le provea los medios para terminarlo, aun después de haber llegado a la mayoridad. J. M. Manresa, *Comentarios al Código Civil Español*, Madrid, Ed. Reus, 1956, T. I, pág. 791; Puig Peña, *op. cit.*, T. V, pág. 501.

El concepto de alimentos cubre también los honorarios de abogado de los menores en una acción para reclamar alimentos, sin que sea necesario que el demandado actúe con temeridad al defenderse de la reclamación. *Conesa v. Corte*, 72 D.P.R. 68 (1951); *Valdés v. Tribunal de Distrito*, 67 D.P.R. 310 (1947).

La determinación de la cuantía de los alimentos corresponde al prudente arbitrio de los tribunales, teniendo en cuenta que haya proporción entre el estado de necesidad del alimentista y la posibilidad económica del alimentante. Art. 146 (31 L.P.R.A. sec. 565). Este principio de proporcionalidad responde a que la definición de alimentos del Art. 142 toma en consideración la posición social de la familia. Como consecuencia de este requisito de proporcionalidad la cuantía de los alimentos será aumentada o reducida a medida que aumenten o disminuyan ambos factores. Art. 146 (31 L.P.R.A. sec. 565); *Falcón v. Cruz*, 67 D.P.R. 530 (1947). El estado de necesidad no implica absoluta indigencia, sino que basta que lo sea en relación con sus condiciones perso-

nales y sociales.(⁶) La determinación de la posibilidad económica del alimentante se hará tomando en consideración los medios de que disponga luego de atender su propio sostenimiento. Algunos tratadistas opinan que en el caso de la estricta obligación alimenticia, la que surge bajo el Art. 143, el llamado a suministrar los alimentos no está obligado a trabajar para ponerse en condiciones de administrarlos, pero sí está obligado a hacerlo cuando se trata de las obligaciones alimenticias que surgen como efecto personal de la patria potestad y del deber de los cónyuges de socorrerse mutuamente.(⁷)

B. *Modo de satisfacer los alimentos*

Con estas consideraciones en mente, veamos la situación del caso ante nos. Aquí se trata de una pensión alimenticia en la cantidad de $300 mensuales impuesta al padre de tres menores de edad no emancipados, que están bajo la patria potestad y custodia de la madre. La obligación del padre está aquí enmarcada en el Art. 143 del Código Civil. No está ante nuestra consideración la suficiencia de la pensión.

El padre ha dejado de satisfacer los $300 mensuales, acumulándose un atraso de más de $8,000. Reclama que a esa suma deben acreditarse los pagos hechos por él, relacionados en la parte I de esta opinión. Aceptar esta proposición obligaría a apartarnos del principio cardinal de necesidad del alimentista como base de la pensión y sería contrario al mantenimiento de un debido orden en el cumplimiento de la obligación alimenticia. El alimentante no puede escoger, a su propio arbitrio, la manera como se ha de distribuir entre sus hijos la pensión impuesta para los tres, ni puede a su discreción decidir la manera de satisfacerla.

Con excepción de los pagos hechos para matrícula y gastos escolares ($225), y los reembolsos hechos a la abuela

---

(⁶) Beltrán de Heredia, *op. cit.*, pág. 37.

(⁷) Beltrán de Heredia, *op. cit.*, págs. 39–40.

paterna de los menores por gastos de alimentación y ropa ($1,800), los demás gastos son de naturaleza extraordinaria y no hallamos base en los autos para justificar su necesidad. Es posible que fuera necesario incurrir en $1,440 para tratamiento de ortodoncia a una de las hijas, pero ese gasto no puede imputarse a la pensión de $300 mensuales en detrimento de la obligación alimenticia para los otros hijos. Tampoco hay justificación en los autos para gastos de cerca de $5,000 para automóviles para el hijo de diecinueve años, ni pueden imputarse a la pensión de los tres hijos esos gastos hechos a favor del hijo mayor, ni los $700 de honorarios de abogado satisfechos en un pleito en que éste fue parte o los $1,500 pagados a un tercero por daños causados por el hijo.

La pensión alimenticia ha de satisfacerse en la cantidad dispuesta por el tribunal, sin descuentos hechos a voluntad del alimentante. De otra manera se causaría un efecto detrimental en la planificación del presupuesto familiar que debe hacer en este caso la madre para atender adecuada y equitativamente las necesidades de los tres menores. Sólo cuando haya mediado acuerdo previo y la autorización del tribunal podrá el alimentante descontar del monto de la pensión aquellas cantidades de dinero que gaste para beneficio de los menores.

No podemos pasar por alto que en la vida de los hijos surgen necesidades imprevistas, algunas de las cuales hay que atender con premura. En esos casos la pensión alimenticia puede no ser suficiente para costear esas necesidades. Recurrir al trámite judicial para que se provea un remedio podría en algunos casos resultar tardío. El gasto extraordinario que en tal caso pueda incurrir el alimentante podría ser objeto de consideración por el tribunal para un reajuste de la pensión, si es que dicho gasto ha afectado su capacidad económica para proveer la pensión. Cada caso deberá atenderse conforme a sus particulares hechos y circunstancias.

▮ Advertimos que en el caso de autos tanto el padre como la madre de los menores trabajan y producen ingresos suficientes para sostener y educar a sus hijos. Si los pagos hechos por el padre y reclamados por él fueron necesarios, no deben imputarse a la pensión dispuesta por el tribunal, mas podrían constituir un crédito contra la madre de los menores. Ambos padres deben compartir esos gastos extraordinarios en proporción a sus respectivos medios de fortuna. Por otro lado, cada padre es dueño de su libérrima voluntad de incurrir en gastos extraordinarios para uno o más hijos, aunque no sean necesarios. Éstos, por supuesto, no pueden afectar el patrimonio del otro padre y mucho menos la pensión alimenticia de los hijos.

## IV

*Conclusión*

Por los fundamentos expresados, *se expedirá el auto solicitado, se dejará sin efecto la resolución recurrida en cuanto dispuso que se acreditaran a lo adeudado por concepto de la pensión alimenticia los pagos reclamados por el demandado, y se dispondrá que previa audiencia a las partes en que puedan aportar las pruebas que a bien tuvieren, se determine cuáles de dichos gastos incurridos por el demandado fueron necesarios y en cuanto a éstos, la proporción en que debió contribuir a dichos gastos la demandante aquí peticionaria. Mientras tanto el demandado deberá continuar pagando, a través de la Secretaría del Tribunal Superior, Sala de Caguas, sin descuentos ni deducciones, la cantidad de $300 mensuales dispuesta como pensión alimenticia para sus hijos, y $1,000 para honorarios de abogado de éstos.*

El Juez Asociado Señor Rebollo López concurre en el resultado sin opinión.