# 2006 DTA 10

## TRIBUNAL DE CIRCUITO DE APELACIONES
## REGIÓN JUDICIAL DE BAYAMÓN
## PANEL III SUSTITUTO

AUREO E. GARCÍA SÁNCHEZ
Peticionario

v.

IVONNE FRANCESCHI BEAUCHAMP
Recurrida

Núm. KLCE-05-00798

San Juan, Puerto Rico, a 25 de octubre de 2005

Panel integrado por su Presidenta, la Juez Bajandas Vélez,
el Juez Aponte Hernández y el Juez Vivoni del Valle

Bajandas Vélez, Juez Ponente

██

**TEXTO COMPLETO DE LA SENTENCIA**

Comparece ante nos el Sr. Aureo E. García Sánchez (Sr. García o el peticionario) mediante el recurso de *certiorari* de epígrafe. En el mismo nos solicita que revoquemos una resolución y una orden, ambas emitidas por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI), el 29 de marzo de 2005 y notificadas el 31 de igual mes y año. A través de la primera, el TPI aprobó y adoptó el Informe de la Examinadora de Pensiones Alimentarias de 18 de marzo de 2005, que recomendó aumentar el monto de la pensión alimentaria para los hijos menores de edad de las partes. Por medio de la segunda, el TPI le requirió al patrono del Sr. García la retención de sus ingresos correspondientes a la nueva pensión alimentaria fijada.

Analizado el recurso presentado, conjuntamente con la comparecencia de la parte recurrida y el derecho aplicable, resolvemos expedir el auto de *certiorari* solicitado, revocar ambos dictámenes y devolver el caso al TPI para procedimientos ulteriores.

**I**

El 6 de agosto de 1994, el Sr. García y la Sra. Ivonne Franceschi Beauchamp (Sra. Franceschi o la recurrida) contrajeron matrimonio en Puerto Rico. Durante el mismo procrearon cuatro hijos de nombres Karina (10 años de edad), Nicole (10 años), Ivanna (7 años) y Aureo (6 años), todos de apellidos García Franceschi. Tras siete años de matrimonio, el 18 de septiembre de 2001, las partes se divorciaron por consentimiento mutuo. ██ Como parte de los acuerdos para el divorcio, las partes estipularon que el Sr. García pagaría una pensión alimentaria mensual ascendiente a $2,000 para beneficio de los cuatro menores. De tal cantidad, el Sr. García desembolsaría $1,200 directamente a la escuela de los niños y el sobrante, o sea, $800.00 lo enviaría a la recurrida para los gastos de éstos. El peticionario acordó pagar también la matrícula escolar de sus cuatro hijos y la mitad de los gastos de libros y efectos escolares. Asimismo, las partes pactaron que el Sr. García sufragaría una cantidad de dinero adicional para incluir a sus hijos en un plan médico, y un mes de campamento de verano para cada uno.

El TPI avaló y adoptó tales acuerdos mediante la sentencia de divorcio dictada el 21 de septiembre de 2001, archivada en autos el 26 de septiembre del mismo año. ██

Así las cosas, el 20 de mayo de 2003, el Sr. García presentó una Moción Solicitando Rebaja de Pensión Alimenticia (sic). ██ Alegó que había cumplido puntualmente con todos los acuerdos sobre la pensión alimentaria fijada para sus hijos y demás gastos, algunos de los cuales le correspondían ser sufragados a la recurrida. Explicó que en ese momento tenía unos gastos fijos mensuales tales como: el pago de renta y de una guagua Explorer XLT sobre la cual arguyó que era para la comodidad de sus hijos.

De otra parte, argumentó que las circunstancias económicas de la Sra. Franceschi habían mejorado significativamente después del divorcio y que ésta recibía ayuda económica de su compañero consensual, quien alegadamente desde hacía cerca de un año y medio sufragaba muchos de los gastos de la residencia de la recurrida. Precisó que, por el contrario, él continuaba con sus mismos ingresos y gastos adicionales fijos, los cuales habían mermado su capacidad económica para poder continuar pagando una pensión alimentaria tan

elevada y además continuar haciéndose cargo del pago de todos los demás gastos extraordinarios que afrontaba.

A base de tal argumentación, el Sr. García le solicitó al TPI que revisara la pensión establecida. ▄ Alegó que ésta, conjuntamente con los demás gastos que él cubría durante el año, ascendía aproximadamente a $3,000 mensuales, cantidad que era sumamente elevada y le dificultaba el pago de sus obligaciones personales. Puntualizó, asimismo, que ello lo forzaba a llevar un estilo de vida limitado en términos económicos y sin posibilidad alguna de invertir en una residencia propia en la cual pudiera estar con sus hijos cómodamente cuando le correspondiera compartir con ellos. ▄ De este modo, suplicó al TPI que rebajara la pensión alimentaria a $1,000 mensuales, incluyendo el plan médico y que los gastos extraordinarios que sufragaba en la actualidad fuesen prorrateados, en partes iguales, entre ambos padres. ▄

Atendida la aludida moción, el 3 de junio de 2003, el TPI la refirió a la Examinadora de Pensiones Alimentarias (la Examinadora) para la acción que correspondiese. ▄ Dicha orden fue notificada el 14 de agosto de 2003.

El 23 de enero de 2004, la recurrida presentó Moción en Oposición a Solicitud de Rebaja de Pensión Alimenticia (sic). En la misma esbozó que el Artículo 19 de la Ley Especial para el Sustento de Menores, según enmendada en 1994, establecía que para poder solicitar una modificación en la pensión alimentaria fijada tenía que transcurrir el período de tres años, a partir de la fecha de la fijación de la pensión y que en este caso tal período no había pasado. Además, alegó que para variar el monto de la pensión tenían que suscitarse unos cambios significativos o imprevistos, lo que no había ocurrido en este caso.

Por otra parte, la recurrida adujo que la pensión alimentaria que había sido acordada entre las partes, había sido aprobada por el tribunal, por lo que se infería que era justa, adecuada, y en el mejor interés de los menores. Por último, expresó que rebajar la pensión le resultaría muy oneroso, ya que de acuerdo con sus gastos básicos y necesidades no podría sobrellevar también los gastos de los menores no cubiertos por la pensión alimentaria.

El 30 de enero de 2004, el Sr. García presentó Moción Informativa Sobre Descubrimiento de Prueba y Solicitud de Orden. En ésta, el peticionario le acreditó al TPI haber notificado a la Sra. Franceschi un pliego de interrogatorios y requerimientos de admisiones sobre ciertos aspectos de disputa entre las partes, al igual que en torno a la situación económica de la recurrida. ▄ La Sra. Franceschi contestó dicho descubrimiento de prueba el 31 de marzo de 2004. ▄

Por su parte, el 26 de mayo de 2004, el peticionario contestó un primer pliego de interrogatorios y requerimiento de producción de evidencia que la recurrida le notificó el 21 de enero de 2004. En éste, la Sra. Franceschi también indagó sobre la condición económica del Sr. García.

Luego de numerosos incidentes procesales y varias suspensiones, finalmente, el 11 de octubre de 2004, se celebró la vista ante la Examinadora. Durante la misma, los abogados de las partes indicaron que sometían la controversia a base de la información que surgía de las Planillas de Información Personal y Económica (PIPE) de éstas y de los documentos relacionados, por lo que no se celebró una vista evidenciaria. ▄

El 18 de marzo de 2005, la Examinadora emitió su Informe. En el mismo fijó la pensión alimentaria a ser pagada por el peticionario en $2,500 mensuales. Le requirió pagar además el campamento de verano y la matrícula de la escuela de los menores, a ser satisfechos tales pagos al momento de ser requeridos.

Para sustentar su recomendación, la Examinadora determinó como cuestión de hecho que la recurrida pagaba $1,300 mensuales por concepto de alquiler y que se desempeñaba como vendedora de AT&T Wireless en Hato Rey, devengando un ingreso bruto mensual de $1,800. También señaló que en su planilla, la Sra. Franceschi declaró, entre otros, gastos de agua, luz, alimentos, gasolina, ropa, barbería, gastos médicos y escolares. Por otro lado, la Examinadora concluyó que la matrícula anual escolar para los cuatro menores era de

$2,440 y la mensualidad escolar de $1,200. ■■■ También dictaminó que el gasto aproximado de campamento de verano de los niños, necesario para que la Sra. Franceschi pudiera trabajar, ascendía a $2,000 anuales, o sea, $166 mensuales. ■■■

Con relación al peticionario, el Informe de la Examinadora indicó que éste *"[p]aga la cantidad de $600.00 mensuales por concepto de alquiler"; "[s]e desempeña como Gerente de Cuenta en E.J. Gallo Sinery (sic) en Texas..."* y *"devenga un ingreso bruto mensual de $5,166.00 que, luego de las deducciones mandatorias y el plan médico y se reduce a $3,710 mensuales neto"*. ■■■ Por último, expresó que *"[e]l señor García declaró en su planilla de información personal y económica, gastos de agua, luz, teléfono, alimentos, gasolina, peaje, laundry, transportación pública, entretenimiento, gastos médicos y escolares, entre otros (véase planilla informativa)."* ■■■

Al tenor de tales hechos, la Examinadora le recomendó al TPI que aumentara la pensión alimentaria original a $2,500 mensuales, más el 67.33 por ciento del pago de la matrícula y del campamento de verano, al momento de requerírsele al peticionario el pago de los mismos. La Examinadora razonó que siendo $3,710.00 el ingreso neto mensual del peticionario, luego de restadas las deducciones obligatorias por ley y conforme a las Guías, al Sr. García le correspondía aportar mensualmente para los gastos mínimos ■■■ de los menores la cantidad de $1,359.34, o sea, $339.83 por cada uno.

Luego de ello, la Examinadora procedió a calcular la aportación del peticionario para los gastos adicionales educativos, de vivienda y cuido. Para ello determinó que el ingreso neto familiar (la suma del ingreso neto del peticionario y la recurrida) ascendía a $5,510.00 ■■■ mensuales, por lo que el Sr. García aportaba el 67.33% del ingreso neto familiar. Así, concluyó que, según las Guías, el peticionario debía aportar $700.23 por vivienda, $136.90 por matrícula del colegio, $673.30 por mensualidad del colegio y $111.76 por cuido. Concluyó que sumados dichos conceptos a la partida por gastos mínimos ($1,359.34), ello arrojaba un total de $2,981.53.

Por entender que la pensión así determinada equivalía al 80% del ingreso neto del Sr. García, la Examinadora recomendó que el monto de la misma fuese ajustado a $2,500.00 mensuales y que el peticionario realizara las aportaciones del campamento de verano y la matrícula al momento de requerírsele efectuar tales pagos. ■■■

De igual modo, la Examinadora le recomendó al TPI: (1) que la nueva pensión fuese efectiva a la fecha de la resolución que se dicte a tales efectos, (2) que ratificara el proyecto de orden de retención de ingresos que remitía, (3) que fijara una cantidad razonable por concepto de honorarios de abogado, y (4) que el Sr. García informara al TPI su acceso a cualquier cubierta de plan médico a un costo razonable. ■■■

El 29 de marzo de 2005, el TPI le impartió su aprobación al Informe de la Examinadora y emitió la resolución recurrida. Asimismo fijó en $600 los honorarios de abogado a ser satisfechos por el peticionario, en 90 días. En dicha fecha además emitió la orden de retención de ingresos dirigida al patrono del Sr. García. Ambos dictámenes fueron notificados el 31 de marzo de 2005.

Insatisfecho con los mismos, el 13 de abril de 2005, el Sr. García presentó una Moción de Reconsideración y Solicitud de Descubrimiento de Prueba Adicional. ■■■ A través de la misma objetó el monto de la pensión alimentaria fijada, el que, según él, equivalía al 74.09% de su salario mensual. Arguyó que dicha pensión constituia más del 50 por ciento de sus ingresos, lo cual no estaba permitido por la Ley Especial para el Sustento de Menores, según enmendada, ni por el Consumer Credit Protection Act.

En particular, el Sr. García alegó que desde la vista ante la Examinadora celebrada en octubre de 2004 a ese momento habían surgido cambios significativos en la capacidad económica de la Sra. Franceschi, los cuales ésta no había informado al TPI, que ameritaban que fueran tomados en consideración. De igual modo, peticionó que

la orden de retención fuese dejada sin efecto debido a que la misma perjudicaría los mejores intereses de los menores por el alegado mal manejo y estilo de vida de la recurrida.

El Sr. García también precisó que en su PIPE había indicado que sus gastos mensuales fijos ascendían a más de $2,365, y que si a esa cantidad se le sumaba la nueva pensión alimentaria fijada de $2,748.57 y se restaba este total de su ingreso neto mensual (de $3,710), tendría un resultado negativo de -$1,403.57. Expresó que su salario neto estaba comprometido en el 74.09 por ciento y no teniendo éste otra forma de mantenerse y cumplir con sus obligaciones personales, ello lo tornaba en una carga para sus familiares y lo ponía en riesgo de cometer un desacato al TPI.

De otro lado, argumentó que según el Consumer Credit Protection Act, 15 USC Sec. 1673, y el Artículo 24 (7) de la Ley Especial para el Sustento de Menores, Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, 8 LPRA Sec. 523(6), un patrono no puede retener más del 50 por ciento del salario neto de un empleado. Por ello, adujo que el total del ingreso neto a ser comprometido para el pago de alimentos no podía ser, en su caso, más de $1,855.

Por otra parte, el peticionario esgrimió que aunque conforme al Informe emitido por la Examinadora la recurrida devengaba un salario de $1,800 mensuales y trabajaba como vendedora para A&T Wireless en Hato Rey, lo cierto era que a menos de una semana de la vista celebrada ante la Examinadora, la Sra. Franceschi había renunciado a dicho puesto y había cambiado de trabajo. Señaló que el salario de ésta debía haber aumentado significativamente, debido a que recientemente la Sra. Franceschi se había mudado a un apartamento localizado en un área exclusiva de Guaynabo. Mencionó además, que ésta se había realizado dos cirugías estéticas, cuyo valor aproximado ascendía a $15,000 y había hecho varios viajes. Alegó que ello constituia un cambio extraordinario en su condición económica que ameritaba que fuera considerado por el TPI. Asimismo, argumentó que el estilo de vida de la Sra. Franceschi contrastaba radicalmente con el que él llevaba. Explicó que vivía en un apartamento alquilado de una sola habitación, pues su ingreso, luego de pagar sus deudas y la pensión alimentaria, no le permitía más.

Finalmente, le mencionó al TPI que el 2 de febrero de 2004, la Sra. Franceschi había presentado una petición ante el Tribunal de Quiebra Federal bajo el Capítulo 7 y que al presente desconocía el estatus de dicho caso y si ella había logrado obtener un descargo de todas sus deudas, lo que ciertamente afectaba su ingreso en este momento, pues no tenía que afrontar deuda alguna.

Fundamentado en dichos argumentos, el peticionario le requirió al TPI que modificara su dictamen y que fijara una cuantía por concepto de pensión alimentaria que fuera justa. Además, solicitó que al tenor del alegado cambio significativo de circunstancias en la capacidad económica de la recurrida, le autorizara a realizar descubrimiento de prueba respecto a los ingresos y acreencias de ésta.

La aludida moción de reconsideración del peticionario fue acogida por el TPI durante una vista celebrada el 20 de abril de 2005 y más adelante, declarada no ha lugar por resolución de 24 de mayo de 2005, notificada el 27 de mayo de 2005.

Inconforme, el 24 de junio de 2005, el Sr. García presentó el recurso de *certiorari* de autos. En éste hizo los siguientes señalamientos:

*"A. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL APLICAR AUTOMÁTICAMENTE Y SIN SOPESAR TODAS LAS CIRCUNSTANCIAS ESPECIFICAS DE LA SITUACIÓN ECONÓMICA DEL SR. GARCÍA, LAS GUIAS MANDATORIAS PARA LA FIJACIÓN DE PENSIONES ALIMENTARIAS, PESE A QUE SU APLICACIÓN AL PRESENTE CASO CONLLEVA UN RESULTADO INJUSTO E INADECUADO.*

*B. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL FIJAR UNA PENSIÓN ALIMENTARIA QUE EXCEDE DEL 60% DEL SALARIO NETO SEMANAL DEL AQUÍ PETICIONARIO, SR. AUREO GARCÍA SÁNCHEZ, EN VIOLACIÓN A LA LEY ESPECIAL DE SUSTENTO DE MENORES, SEGÚN ENMENDADA, Y A LA LEY FEDERAL CONSUMER CREDIT PROTECTION ACT, Y AL EMITIR UNA ORDEN DE RETENCIÓN AL PATRONO DEL AQUÍ PETICIONARIO EN CONTRAVENCIÓN A LAS MISMAS.*

*C. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL NO PERMITIR DESCUBRIMIENTO DE PRUEBA AL PETICIONARIO ANTE LOS CAMBIOS SUSTANCIALES Y SIGNIFICATIVOS EN LA CAPACIDAD ECONÓMICA DE LA SRA. IVONNE FRANCESCHI.*

*D. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL APLICAR AUTOMÁTICAMENTE (Y SIN SOPESAR TODAS LAS CIRCUNSTANCIAS ESPECIFICAS DE LA SITUACIÓN ECONÓMICA DEL SR. AUREO GARCIA), LAS GUIAS MANDATORIAS PARA LA FIJACIÓN DE PENSIONES ALIMENTARIAS PESE A QUE SU APLICACIÓN AL PRESENTE CASO CONLLEVA UN RESULTADO INJUSTO E INADECUADO.*"

El 28 de junio de 2005, el peticionario fundamentadamente nos solicitó que emitiéramos una orden en auxilio de nuestra jurisdicción para paralizar los efectos de la resolución y la orden recurridas y que mantuviéramos el *status quo* de la pensión estipulada en el divorcio hasta que se adjudicara el recurso en los méritos.

En resolución emitida el 29 de junio de 2005 accedimos a dicha petición y paralizamos los dictámenes recurridos. Además, le ordenamos al peticionario que continuara cumpliendo con su obligación alimentaria para con sus cuatro hijos según estuvo vigente desde la sentencia de divorcio el 21 de septiembre de 2001. Por último, le concedimos a la recurrida el plazo de 15 días para que fijara su posición respecto al recurso incoado.

El 14 de julio de 2005, la recurrida presentó su oposición al recurso. En esencia, arguyó que los errores apuntados por el peticionario no habían sido cometidos por el TPI. Básicamente adujo los mismos argumentos que en sus escritos previos al TPI.

Por otro lado, la recurrida presentó en igual fecha una moción de reconsideración solicitándonos que dejáramos sin efecto la paralización de los aludidos dictámenes y mantuviésemos la pensión alimentaria establecida por el TPI. Más adelante, el 28 de julio de 2005, el Sr. García presentó su oposición a dicha moción, quedando dicho asunto sometido para decisión de este Tribunal.

Teniendo el beneficio de las comparecencias de ambas partes, pasamos a resolver las controversias planteadas, no sin antes esbozar los principios de derecho aplicables.

## II

Como es sabido, la obligación de los progenitores de brindar alimentos a sus hijos menores de edad no emancipados es parte esencial del derecho a la vida consagrado en las Secciones 1 y 7 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico. *McConnell Jiménez v. Palau Grajales*, res. en 5 de mayo de 2004, **2004 J.T.S. 73**; *Martínez Vázquez v. Rodríguez Laureano*, res. en 13 de agosto de 2003, **2003 J.T.S. 4**. Esta obligación halla su base en principios universalmente reconocidos de solidaridad humana asociados al derecho natural e imperativos de los vínculos familiares. *Argüello López v. Argüello García,* res. en 31 de agosto de 2001, **2001 J.T.S. 127**; *Rodríguez Avilés v. Rodríguez Beruff,* 117 D.P.R. 616, 621 (1986); *Martínez v. Rivera Hernández*, 116 D.P.R. 164, 168 (1985).

Este deber, de estirpe constitucional, está igualmente resguardado en los Artículos 143 y 153 del Código

Civil de Puerto Rico, 31 L.P.R.A. secs. 562 y 601, respectivamente. Mediante el Artículo 143 del Código Civil se establece la obligación recíproca de alimentos entre parientes. ▉ En tanto, bajo el Art. 153 se impone a los padres el deber de alimentar como parte de la patria potestad. Al respecto se señala que:

*"El padre y la madre tienen, respecto de sus hijos no emancipados:*

*(1) El deber de alimentarlos, tenerlos en su compañía, educarlos e instruirlos con arreglo a su fortuna, y representarlos en el ejercicio de todas las acciones que puedan redundar en su provecho.*

*(2)....".*

En *Guadalupe Viera v. Morell*, 115 D.P.R. 4 (1983), el Tribunal Supremo de Puerto Rico interpretó el ámbito y diferencias de estas disposiciones señalando lo siguiente:

*"La obligación alimentaria que surge del Art. 143 se refiere al caso del padre o la madre de hijos no emancipados que no viven en su compañía y sobre los cuales no tiene la patria potestad, y a hijos y otros parientes, no importa su edad, que tengan necesidad de alimentos, y siempre que el alimentante cuente con recursos para proveerlos. A diferencia de la obligación bajo el ejercicio de la patria potestad, el deber de proveer alimentos bajo el articulado del Código que regula los alimentos entre parientes- 142 al 151 (31 L.P.R.A. secs. 561-570)-, se basa en el estado de necesidad del hijo y depende de la condición económica del padre alimentante. Se distingue, además, en que la obligación es exigible cuando se demuestra la necesidad de alimentos del hijo y son reclamados judicialmente. Art. 147 (31 L.P.R.A. sec. 566)."*

Tal obligación es distinguible de la impuesta por el Art. 153 del Código Civil, *supra*, la cual emana del ejercicio de la patria potestad. Véase, *Guadalupe Viera v. Morell*, *supra*, a las págs. 12-13.

La obligación del sustento de los hijos menores recae en ambos padres. Sin embargo, una vez roto el vínculo matrimonial, se reparte entre los padres el pago de la pensión alimentaria en cantidad proporcionada a su caudal respectivo. Artículo 145 del Código Civil, 31 L.P.R.A. sec. 564; *Figueroa v.* Rivera, 149 D.P.R. 565,572 (1999); *López Martínez v. Yordán*, 104 D.P.R. 594 (1976).

En Puerto Rico, los casos de menores están revestidos del más alto interés público. *Maldonado v. Cruz*, res. el 8 de enero de 2004, **2004 J.T.S. 8**. Dicho interés no es otro que el bienestar del menor. *Ríos Rosario v. Vidal Ramos*, 134 D.P.R. 3 (1993). Por tal razón, el Estado ha procurado que este interés esté ampliamente legislado mediante la Ley Núm. 5 de 30 de diciembre de 1986, según enmendada por la Ley Núm. 86 de 17 de agosto de 1994, conocida como *"La Ley Orgánica de la Administración para el Sustento de Menores"*, en adelante, Ley para el Sustento de Menores, 8 L.P.R.A. sec. 501 *et. seq.*

La Ley para el Sustento de Menores consagra la política pública del Estado de crear un procedimiento expedito que permita procurar de los padres, o personas legalmente responsables, que contribuyan a la manutención y bienestar de sus hijos o dependientes mediante la agilización de los procedimientos administrativos y judiciales para la determinación, recaudación y distribución de la pensión alimentaria. *McConnell Jiménez v. Palau Grajales, supra*; *Martínez Vázquez v. Rodríguez Laureano, supra*.

Este propósito se logra mediante el nombramiento de examinadores, 8 L.P.R.A. sec. 512, quienes, luego de analizar la información pertinente y escuchar la evidencia sobre las partes, formulan recomendaciones sobre las pensiones, que pueden ser acogidas o rechazadas por el Tribunal. 8 L.P.R.A. sec. 517. La Ley hace mandatorio que la fijación de la pensión sea realizada considerando las Guías para la Determinación y Modificación de Pensiones Alimentarias, 8 L.P.R.A. sec. 518, Reglamento Núm. 4070 de 8 de diciembre de 1989 (en adelante, las Guías).

Ahora bien, nuestro Tribunal Supremo ha dispuesto que la determinación de la cuantía de los alimentos corresponde al prudente arbitrio de los tribunales. Para ello debe tenerse en cuenta que haya proporción entre el estado de necesidad del alimentista y la posibilidad económica del alimentante, considerando los medios de que éste disponga luego de atender su propio sostenimiento. Art. 146 del Código Civil, 31 L.P.R.A. sec. 565; *Chévere v. Levis*, 150 D.P.R. 550 (2000); *Guadalupe Viera v. Morell, supra*, pág. 15.

Al comentar sobre el Art. 146 del Código Civil Español, esencialmente equivalente al Art. 146 nuestro, el tratadista Manresa señala:

*"Ese principio de proporcionalidad es uno de los caracteres esencialísimos de la obligación de alimentos, pues si ésta se halla establecida para que el alimentista pueda atender a las necesidades de la vida según su clase y posición social, claro y evidente es que ha de tener relación con ellas, **y además no puede dejar de tenerse en cuenta el caudal del que ha de prestarlos para que no se le imponga al aliment[ante] una carga superior a los medios de que disponga para levantarla** y al mismo tiempo para que no dejen de concederse los alimentos en la extensión adecuada, a la posición de la familia y a las exigencias que la misma lleva consigo."* (Énfasis suplido.) ▮

J. Castán Tobeñas, por su parte, ▮ expresa:

*"La valorización de los medios del obligado pueden también ofrecer algunas dudas. **Dicha valoración, como la de la necesidad del alimentista, es de libre apreciación de los Tribunales.** En líneas generales se puede entender que el obligado cuenta con medios suficientes si puede realizar la prestación alimenticia **sin perjudicar su propia manutención. ..."*. (Énfasis suplido.)

Más adelante, dicho tratadista aprueba la posición de Tedeschi, al efecto de que *"está en condiciones de suministrar alimentos **sólo quien disponga de recursos que excedan de los necesarios para atender su propio mantenimiento** –y de otros alimentistas con derecho preferente-, teniendo en cuenta su condición social y en cierta medida sus hábitos de vida."* (Énfasis nuestro.) ▮

De otro lado, resulta fundamental que al imponer la obligación de alimentos, el ingreso que le sobre al alimentante ha de ser suficiente para proporcionar la satisfacción de las necesidades de la vida al nivel mínimo aceptable para la conciencia social. ▮

Este carácter de proporcionalidad es igualmente observado por el Art. 19 de la Ley para el Sustento de Menores. Al respecto, señala que a fines de computar la pensión alimentaria, se considerarán, entre otros, los siguientes factores:

*"1. Los recursos económicos de los padres y del menor;*

*2. la salud física y emocional del menor, y sus necesidades y aptitudes educacionales o vocaciones;*

*3. el nivel de vida que hubiera disfrutado el menor si la familia hubiera permanecido intacta;*

*4. las consecuencias contributivas para las partes, cuando ello sea práctico y pertinente, y*

*5. las contribuciones no monetarias de cada padre al cuidado y bienestar del menor."* ▮

En cuanto a la determinación de los recursos económicos del alimentante, el Art. 19 de la referida Ley sostiene que deberá considerarse no sólo el ingreso neto ordinario, sino también el capital o patrimonio total de éste. Esta legislación establece, además, que a fines de realizar el cómputo proporcional de la pensión, se

tomarán en cuenta iguales criterios a la persona custodia. *Id.*

Valga mencionar que dicho criterio de proporcionalidad se observará también al momento de reducir o aumentar la cuantía. *Martínez Vázquez v. Rodríguez Laureano, supra*; *Guadalupe Viera v. Morell, supra.*

A fin de determinar la capacidad económica de un alimentante para proveer alimentos, un tribunal no está limitado a considerar únicamente evidencia, testifical y documental sobre los ingresos. *López v. Rodríguez*, 133 D.P.R. 23, 33 (1988). Es por ello que puede considerarse, incluso por prueba circunstancial, aspectos tales como el estilo de vida que lleva el alimentante, su capacidad para generar ingresos, la naturaleza y cantidad de propiedades con que cuenta, la naturaleza de su empleo o profesión y sus otras fuentes de ingreso. A*rgüello López v. Argüello García, supra*; *Chévere v. Levis, supra*; *Rodríguez Rosado v. Zayas Martínez*, 133 D.P.R. 406, 412 (1993); *López v. Rodríguez, supra.*

De otra parte, en cuanto a la determinación de los "*ingresos*", la Ley para el Sustento de Menores contempla una definición sumamente abarcadora, a saber:

"*(9) "Ingresos" significa cualquier ganancia, beneficio, rendimiento o fruto derivado de sueldos, jornales o compensación por servicios personales, incluyendo la retribución recibida por servicios prestados como funcionario o empleado del Estado Libre Asociado de Puerto Rico, del Gobierno Federal de los Estados Unidos de América según lo permitan las leyes y reglamentos federales aplicables, de cualquier estado de la Unión de los Estados Unidos, o de cualquier subdivisión política de los mismos, o de cualquier agencia o instrumentalidad de cualesquiera de las mencionadas entidades en cualquiera que sea la forma en que se pagaren; o de profesiones, oficios, industrias, negocios, comercio o ventas; o de operaciones en propiedad, bien sea mueble o inmueble, que surjan de la posesión o uso del interés en tal propiedad; también de los derivados de intereses, rentas, dividendos, beneficios de sociedad, valores o la operación de cualquier negocio explotado con fines de lucro o utilidad; y ganancias, beneficios, rendimientos, fondos emolumentos o compensación derivados de cualquier procedencia, incluyendo compensaciones como contratista independiente, compensaciones por desempleo, compensaciones por incapacidad, beneficios de retiro y pensiones o cualquier otro pago que reciba un alimentante de cualquier persona natural o jurídica.*"

Art. 2 de la Ley para el Sustento de Menores, *supra*, 8 L.P.R.A. sec. 501, en su inciso (16).

En tanto, la Ley define el "*ingreso neto*" como:

"*(a) quellos ingresos disponibles al alimentante, luego de las deducciones por concepto de contribuciones sobre ingresos, seguro social y otras requeridas mandatoriamente por ley. Se tomarán en consideración, además, a los efectos de la determinación del ingreso neto, las deducciones por concepto de planes de retiro, asociaciones, uniones y federaciones voluntarias, así como los descuentos o pagos por concepto de primas de pólizas de seguros de vida, contra accidentes o de servicios de salud cuando el alimentista sea beneficiario de éstos. La determinación final se hará según toda la prueba disponible, incluyendo estimados, estudios y proyecciones de ingresos, gastos, estilo de vida y cualquier otra prueba pertinente.*"

Art. 2 de la Ley para el Sustento de Menores, 8 L.P.R.A. sec. 501 (17).

Observando estas definiciones, la Sección 5 de las Guías indica que se considerará como **ingreso neto disponible,** aquella parte del ingreso bruto que, luego de descontársele las deducciones mandatorias y otras deducciones aceptadas, queda disponible para enfrentar el pago de las pensiones alimentarias. Es decir, que luego de determinarse el "*ingreso bruto*", el cual conlleva el análisis de todas las posibles fuentes de ingreso con las que cuenta el alimentante, "*entonces, deberá determinarse el ingreso neto, que es el punto de partida para la fijación de la pensión alimentaria.*" *Martínez Vázquez v. Rodríguez Laureano, supra.*

De otra parte, luego de establecida la cuantía de la pensión alimentaria, el Art. 19 de la Ley para el Sustento de Menores, *supra,* establece que toda orden de pensión alimentaria podrá revisarse y modificarse luego de transcurridos tres años desde la fecha en que la orden fue establecida o modificada por última vez. No obstante, el aludido artículo le confiere a los tribunales la facultad para iniciar dicho procedimiento en cualquier momento y fuera del ciclo de tres años, cuando entienda que existe justa causa para así hacerlo, tal como variaciones o cambios significativos o imprevistos en los ingresos, capacidad de generar ingresos, egresos, gastos o capital del alimentante o alimentista, o en los gastos, necesidades o circunstancias del menor; o cuando exista cualquier otra evidencia de cambio sustancial en las circunstancias que dieron lugar a la pensión vigente.

Según interpretado por el Tribunal Supremo de Puerto Rico, esta disposición limita la discreción del Tribunal de Primera Instancia para modificar una pensión alimentaria vigente, ya se hubiere estipulado la pensión original, ya se hubiere establecido como resultado de un pleito contencioso, en el sentido de que es indispensable que ocurran cambios sustanciales significativos que justifiquen la modificación. No basta cualquier cambio en las circunstancias, éste tiene que ser sustancial con relación al estado de fortuna anterior. Tampoco pueden alegarse circunstancias que pudieron haberse alegado al momento de fijar la pensión que luego se pretende modificar. Véase *Negrón Rivera, Ex parte*, 120 DPR 61 (1987); *López v. Rodríguez, supra*; Sarah Torres Peralta, *La Ley de Sustento de Menores y el Derecho de Alimentos en Puerto Rico*, Publicaciones STP, Inc. Ed. 1997, Secs. 2.40-2.43. Así, el peso de alegar y demostrar la procedencia de la modificación de una pensión alimentaria corresponde al reclamante en cada caso.

### III

Por estar estrechamente relacionados, atenderemos en conjunto los errores denominados A y D. ■■■ La contención medular del peticionario en dichos errores es que la aplicación de las Guías a su caso conlleva resultados injustos e inadecuados. Argumenta que en vista de ello, es el TPI el llamado a evaluar todos los factores envueltos a los fines de fijar la pensión alimentaria tomando en consideración la capacidad económica del alimentante y los mejores intereses y bienestar de los menores.

El peticionario precisa que la pensión fijada ascendente a $2,500 más el 67.33% de los gastos mínimos y el pago de la matrícula y el campamento de verano resultan en el 74.09% de su salario neto mensual de $3,710.00. Explica que restada dicha pensión a éste, el resultado es de $96.43 para sus gastos mensuales que incluyen comida, vivienda, luz, agua, teléfono, etc., cuando, según acreditó en su PIPE, tales gastos ascendían a más de $2,365.00. Por ello, el Sr. García entiende que la pensión fijada no es proporcional a sus recursos económicos. Alega, por otro lado, que por no poder sufragar el pago de un apartamento, en mayo de 2005 regresó a vivir a casa de sus padres y, por no poderle pagar a sus acreedores, posiblemente tendrá que acogerse a la protección de la Ley de Quiebras Federal. Así, arguye que la aplicación de las Guías a su caso lo privan de su derecho a subsistir.

Por su parte, la Sra. Franceschi aduce en su escrito de oposición que estos errores no se cometieron, pues la Ley para el Sustento de Menores, en su Art. 19, contiene una clara política pública enfocada a que las pensiones se adjudiquen conforme a las Guías mandatorias. Asimismo, esgrime que dicho artículo establece la presunción de que la pensión alimentaria resultante de las Guías es justa, adecuada y en el mejor interés del menor y que ésta nunca ha sido rebatida en este caso.

Sobre el reclamo del peticionario de que la Examinadora no sopesó las circunstancias específicas de su situación económica, la recurrida destaca que en su Informe "...*surgen dos determinaciones de hechos en cuanto a los gastos del peticionario que la Examinadora de Pensiones tomó en consideración según informados por éste en su planilla de información personal y económica*". ■■■

La recurrida resalta además que el pago de $1,359.34 mensuales imputado al peticionario para cubrir las necesidades básicas de los menores es correcta, pues éstos además tienen unos gastos suplementarios de

vivienda, colegio privado y campamento que hay que cubrir. Explica que el gasto de vivienda montante a $1,300 reclamado para la recurrida y los cuatro menores es razonable, cuando el peticionario reclamó $600 para una sola persona.

De otro lado, la recurrida alega que el peticionario no cuestionó los gastos suplementarios de educación de los menores por razón de éstos asistir a colegios privados, ni presentó alternativas para los mismos. También, argumenta que rebajar la pensión alimentaria impuesta al peticionario le impondría sufragar una carga de más del 80% de los gastos de los menores, a pesar de tener un ingreso mucho menor que el peticionario, el cual alega es de $2,000. ▪

Por último, sostiene que el peticionario no probó que la Examinadora erró al aplicar las Guías mandatorias. No obstante, destaca que, al ésta percatarse que la pensión alimentaria fijada por las Guías ascendía a $2,981.30, le recomendó al TPI que la ajustara a $2,500 mensuales, lo que fue en beneficio del peticionario. Esgrime asimismo que el Sr. García no ha logrado probar su incapacidad para pagar la nueva pensión alimentaria.

Analizados cuidadosamente los argumentos de ambas partes, concluimos que el TPI incidió al no atender los reclamos del peticionario respecto al efecto que sobre su propio sostenimiento tendría la nueva pensión fijada. El Sr. García le planteó al TPI en su moción de reconsideración presentada el 13 de abril de 2005 que dicha pensión incumplía con el criterio de proporcionalidad que tanto el Art. 146 del Código Civil como el Art. 19 de la Ley de Sustento de Menores establecen a los fines de fijar la pensión alimentaria de los menores.

Resulta claro de la normativa antes expuesta que son los tribunales los llamados a determinar la cuantía de los alimentos según su prudente arbitrio. Así, para cumplir con este deber ministerial, los tribunales deberán tener en cuenta que haya proporción entre el estado de necesidad de los alimentistas y la posibilidad económica del alimentante, considerando para ello los medios de que disponga, pero luego de atender su propio sostenimiento.

En el caso de autos, el peticionario alegó con suficiente precisión en sus escritos ante el TPI que, al tenor de la nueva pensión aumentada, su propio sostenimiento se menoscababa, al punto de tener un alegado sobrante de $96.43 para sus propios gastos. Enfatizó igualmente, que aun con el ajuste recomendado por la Examinadora persistía dicha situación. También expresó que en su PIPE había indicado que tenía gastos mensuales de luz, agua, teléfono, etc. que ascendían a $2,365.00. Asimismo, arguyó que en mayo de 2005, o sea, después de la vista ante la Examinadora, se tuvo que mudar del apartamento alquilado que ocupaba a casa de sus padres. Ante tales reclamos, nada hizo el TPI y procedió a declarar no ha lugar la moción de reconsideración presentada por el peticionario. El TPI incidió.

Ante la contundencia de las alegaciones del Sr. García, el TPI debió, al menos, haberle dado la oportunidad de probarlas mediante la celebración de una vista evidenciaria. Advertimos que el Art. 146 del Código Civil toma en consideración el propio sostenimiento del alimentante como base para evaluar la proporcionalidad entre el estado de necesidad de los alimentantes y la posibilidad económica del alimentante. Según se desprende del expediente, el TPI fijó la nueva pensión alimentaria sin tomar en consideración el propio sostenimiento del alimentante para lo cual alegadamente contaría con sólo $96.43 mensuales.

En su último señalamiento designado C, el peticionario arguye que incidió el TPI al no permitirle realizar descubrimiento de prueba, a pesar de haberle planteado a éste que la capacidad económica de la recurrida había cambiado sustancial y significativamente después de la vista celebrada ante la Examinadora.

Por su parte, la recurrida sostiene que la petición de descubrimiento es tardía. Arguye que el Sr. García solicitó el descubrimiento de prueba luego de haberse sometido el caso ante la Examinadora. Destaca que el Sr.

García pudo haber solicitado ese descubrimiento de prueba en la aludida etapa y no lo hizo, accediendo a someter su caso por los documentos presentados.

Surge del expediente que en su moción de reconsideración, el peticionario adujo que la situación económica de la recurrida había cambiado sustancialmente, razón por la cual entendía que procedía que el TPI modificara la pensión fijada. De este modo, el Sr. García le señaló al TPI que a menos de una semana de la vista ante la Examinadora, la Sra. Fraceschi había cambiado de trabajo y que su salario habría de haber aumentado. También alegó que ésta se había mudado a un apartamento en una zona exclusiva de Guaynabo y que había hecho varios viajes. Asimismo, informó al TPI que la recurrida se había acogido a la protección de la Ley de Quiebras federal y que por ello, interesaba saber si ésta había obtenido el descargo de sus deudas. Por todo lo anterior, el peticionario solicitó permiso del tribunal para realizar descubrimiento de prueba, el cual el TPI declaró no ha lugar. Erró al así actuar.

Aunque somos conscientes de que la normativa vigente limita la discreción del TPI para modificar una pensión alimentaria vigente, pues sólo la podrá revisar luego de tres años de ser modificada por última vez, la doctrina ha enunciado que tales limitaciones no operan cuando existe justa causa. Esta justa causa está cimentada en el cambio sustancial de circunstancias con relación al estado de fortuna anterior. Igualmente, se ha establecido que el peso de demostrar la procedencia de una modificación de pensión alimentaria le corresponde a aquél que la reclama.

En el caso de autos, el peticionario adujo razones suficientes para mover la discreción del TPI para atender tales alegaciones y darle la oportunidad de realizar descubrimiento de prueba respecto a que la situación económica de la recurrida había cambiado sustancialmente. En efecto, en su Oposición a *Certiorari,* la recurrida acepta que cambió de trabajo luego de la vista ante la Examinadora, pero que presuntamente gana $200.00 más que en su antiguo empleo.█ Tanto las alegaciones del peticionario como la aceptación de la recurrida de que cambió de trabajo sostienen el derecho del Sr. García a realizar descubrimiento de prueba respecto a la situación económica de la recurrida.

Al tenor de la normativa vigente, el TPI debió haber permitido y reglamentado el descubrimiento de prueba solicitado y -de ello proceder- celebrar las vistas evidenciarias que hubiesen sido necesarias para probar el alegado cambio significativo en la situación económica de la Sra. Franceschi. Nótese que una vez disuelto el vínculo matrimonial, la obligación para el sustento de los hijos menores recae en ambos padres en cantidad proporcionada a su caudal respectivo. El TPI incidió al no darle la oportunidad al peticionario de realizar el descubrimiento de prueba necesario para sustentar que la recurrida, por la alegada mejoría de su situación económica, podía aportar una cantidad mayor al sostenimiento de sus hijos menores de edad.

Por último, en su segundo señalamiento de error (denominado B), el Sr. García argumenta que la pensión fijada también contraviene el Consumer Credit Protection Act respecto al porcentaje autorizado de retención de su salario.

En cuanto dicho segundo error, la Sra. Franceschi alega que el Consumer Credit Protection Act, 15 USC § 1673, es meramente un mecanismo de protección que establece un límite porcentual respecto a la cantidad de dinero que puede ser retenida del ingreso de una persona. Indica que el propósito del estatuto es proveer un alivio al consumidor para que pueda cumplir con sus compromisos económicos y que "...*este propósito nada tiene que ver con la obligación de proveer alimentos*". █ Finalmente, sostiene que este planteamiento es prematuro porque el patrono del Sr. García aún no ha hecho retención alguna y no se sabe si, de hacerla, será contraria al Consumer Credit Protection Act.

Coincidimos con la parte recurrida en que el propósito de dicho estatuto nada tiene que ver con la obligación de proveer alimentos. Es meramente un alivio al consumidor para que pueda cumplir con sus

compromisos. No se cometió el segundo error señalado.

Al tenor de lo aquí resuelto, procede declarar no ha lugar la moción de reconsideración presentada por la recurrida el 14 de julio de 2005.

## IV

Por los fundamentos expuestos, se expide el auto de *certiorari* solicitado y se revoca tanto la Resolución como la Orden de Retención, ambas emitidas el 29 de marzo de 2005 y notificadas el 31 de igual mes y año. Se devuelve el caso al TPI para que -a la brevedad posible- éste le conceda al peticionario un término razonable para que realice el descubrimiento de prueba aquí autorizado y señale una vista evidenciaria, de forma compatible con lo resuelto en esta sentencia. Por último, disponemos que mientras se lleven a cabo estos procedimientos, el TPI mantendrá la pensión alimentaria fijada en la sentencia de divorcio. No obstante, el TPI retendrá la facultad para modificarla, de así estimarlo procedente.

Lo acordó y lo manda en Tribunal y lo certifica la Secretaria del Tribunal.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones